PEORIA ROOFING AND SHEET METAL COMPANY, Appellee, v. THE INDUSTRIAL COMMISSION *et al.* (Timothy J. Farmer, Appellant).

Third District (Industrial Commission Division)   No. 3—88—0069WC

Opinion filed April 12, 1989.

Kevin M. Miller, of Goldsworthy, Fifield & Hasselberg, of Peoria, for appellant.

Louis G. Astaves and August M. Mangoni, of August M. Mangoni, Ltd., both of Chicago, for appellee.

PRESIDING JUSTICE BARRY delivered the opinion of the court:

The parties agree that the petitioner-appellant, Timothy J. Farmer, was injured in a compensable accident during his employment with the respondent-appellee, Peoria Roofing and Sheet Metal Company. The Industrial Commission (Commission) awarded temporary total disability benefits under the Workers' Compensation Act (the Act) (Ill. Rev. Stat. 1985, ch. 48, par. 138.1 *et seq.*). The circuit court reversed the Commission's calculation of the petitioner's average weekly wage (wage). This appeal concerns only the wage calculation.

The petitioner roofer was injured on November 4, 1986. The petitioner testified that he began working for the respondent nine years prior to the accident. In the 52 weeks preceding his accident, he had worked solely for the respondent and he had considered himself a full-time employee. He had worked in 43 calendar weeks, a total of 134 days. He earned a total of $17,859.50; his latest hourly wage was $18.09.

Because of a strike, the petitioner did not work during 4 of the 52 weeks preceding his accident. He testified that of the other days he did not work, one he missed because of illness. The other days he did not work because the respondent had sent other workers rather than the petitioner. He acknowledged that the weather as well as his status as a nonforeman, non–family-member employee affected availability of his work.

In calculating the petitioner's average weekly wage under section 10 of the Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.10), the Commission determined the petitioner's average weekly wage for the year preceding the accident by dividing the petitioner's total earnings for that year by one-fifth the number of calendar days in which he had worked that year. The circuit court reversed. The court recalculated the wage by dividing the petitioner's earnings by the number of calendar weeks during which the petitioner worked at least one day.

Section 10 provides as follows:

"The compensation shall be computed on the basis of the 'Average weekly wage' which shall mean the actual earnings of the employee in the employment in which he was working at the time of the injury during the period of 52 weeks ending with the last day of the employee's last full pay period immediately preceding the date of injury, illness or disablement excluding overtime, and bonus divided by 52; but *if the injured employee lost 5 or more calendar days during such period, whether or not in the same week, then the earnings for the remainder of such 52 weeks shall be divided by the number of weeks and parts thereof remaining after the time so lost has been deducted.* Where the employment prior to the injury extended over a period of less than 52 weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee actually earned wages shall be followed. Where by reason of the shortness of the time during which the employee has been in the employment of his employer or of the casual nature or terms of the employment, it is impractical to compute the average weekly wages as above defined, regard shall be had to the average weekly amount which during the 52 weeks previous to the injury, illness or disablement was being or would have been earned by a person in the same grade employed at the same work for each of such 52 weeks for the same number of hours per week by the same employer." (Emphasis added.) Ill. Rev. Stat. 1985, ch. 48, par. 138.10.

The petitioner argues that the Commission properly interpreted the emphasized language of section 10 and determined his wage by dividing his year's earnings by one-fifth the number of calendar days he worked in the year. He argues that the plain language of the statute unambiguously requires this approach. He similarly argues that the court's interpretation ignores the section's emphasized phrase "and parts thereof." Also, he argues both that the Commission's analysis

here was consistent with the analysis the Commission used in several comparable cases and that the analysis comports with the Act's purpose of protecting employees. Regarding the resulting "windfall," the petitioner cites *Hardin Sign Co. v. Industrial Comm'n* (1987), 154 Ill. App. 3d 386, 506 N.E.2d 1066, asserting that the Act was intended to replace an injured worker's lost earning power, not merely to project his probable loss of future income.

The respondent, on the other hand, argues that the legislature's apparent intention in the emphasized section 10 was to calculate the petitioner's wage by dividing his earnings by the number of calendar weeks (*e.g.*, Sunday-through-Saturday periods) during which he had worked. It asserts both that the language of section 10 does not provide for creating "fictional weeks" (*i.e.*, consolidated five-day groups of days worked), and that the language of section 10 should not be mechanically used to reach that result.

The parties properly focus on the emphasized section 10 provision which covers an employee who lost five or more calendar days of work in the 52 weeks preceding his accident. The later, alternative provision, which the respondent has also argued, covers employees with casual nature or terms of employment which make it impractical to compute the average weekly wage under the former provision. There are no such "casual nature or terms of the employment" here. Prior to his accident, the petitioner had worked for the respondent for many years. During the relevant year before the accident, the petitioner had worked for no one else. Also, the evidence suggests that although the availability of work varied, the respondent was able to depend upon the petitioner for full-time, not merely part-time, work. That work was of the construction type, a type historically covered by the Act's special wage calculation. See *Illinois-Iowa Blacktop, Inc. v. Industrial Comm'n* (1989), 180 Ill. App. 3d 885.

■ With attention to the emphasized language, therefore, we are presented the question of whether the Commission complied with section 10 and properly considered the evidence in determining the petitioner's average weekly wage. Assuming compliance with section 10, the Commission's wage determination is a question of fact which a court must not set aside unless it is contrary to the manifest weight of the evidence. *Smith v. Industrial Comm'n* (1988), 170 Ill. App. 3d 626, 525 N.E.2d 81.

■ The following basic law underlies this case. Where the language of a statute is certain and unambiguous, the only legitimate function of the court is to enforce the law as enacted by the legislature. (*Certain Taxpayers v. Sheahen* (1970), 45 Ill. 2d 75, 256 N.E.2d

758.) Further, each word, clause, or sentence of a statute must not be rendered superfluous, but must if possible be given some reasonable meaning. (*Kozak v. Retirement Board* (1983), 95 Ill. 2d 211, 447 N.E.2d 394.) However, when there is an ambiguity in the statutory language, the goal of statutory construction is to ascertain the legislative intent. (See *In re Marriage of Freeman* (1985), 106 Ill. 2d 290, 478 N.E.2d 326.) We consider this law with the premise that the Workers' Compensation Act should be liberally construed to effect its main purpose of providing financial protection for interruption or termination of a worker's earning power. *Hardin Sign Co. v. Industrial Comm'n* (1987), 154 Ill. App. 3d 386, 506 N.E.2d 1066.

■ The respondent's interpretation of the emphasized section 10 language strains the plain meaning of the phrase "and parts thereof." It effectively equates all calendar weeks during which the petitioner did any work, regardless of how many days he worked during the week. Whereas one day is, in fact, only a fraction of a work week, the respondent would seek to have one isolated day in a calendar week regarded as a "week," not as a fractional "part thereof."

Also, under the respondent's analysis, section 10's provision for employees who "lost 5 or more calendar days" is superfluous except for employees who "lost" full calendar weeks of employment. Under the respondent's analysis, any employee who "lost 5 or more calendar days," but nonetheless worked in every calendar week, would have his average wage calculated based on a 52-week year, just as under the initial provision of section 10.

As the respondent observes, the Commission's construction of section 10 results in a "windfall" to some claimants, including the petitioner. Under it, a claimant's award is calculated upon his average weekly earnings during the weeks he worked; it is paid throughout the full year, although the petitioner would not have been expected to work throughout the full year. That fact, however, is not fatal. Section 10 as written allows a windfall in some cases; it recognizes a qualified employee's loss of future earning ability. See *Illinois-Iowa Blacktop*, 180 Ill. App. 3d 885; *McCartney v. Industrial Comm'n* (1988), 174 Ill. App. 3d 213.

Liberally construing the Act to effect its underlying purpose of providing financial protection for a worker's earning power, and giving the Act's full language its reasonable meaning (see *Hardin*, 154 Ill. App. 3d at 389), we find that in setting the petitioner's average weekly wage, the Commission complied with section 10. Furthermore, we do not find the calculated amount to be against the manifest weight of the evidence. Although the Commission calculated the peti-

tioner's number of work weeks by determining one-fifth of his number of work days, rather than one-seventh the number of his work days (compare *Smith*, 170 Ill. App. 3d at 629), there is no evidence, of customary work weeks or otherwise, which is a basis to disturb the calculation.

Accordingly, we reverse the decision of the circuit court of Peoria County and reinstate the order of the Commission.

Reversed.

McNAMARA, WOODWARD, McCULLOUGH, and LEWIS, JJ., concur.