(No. 90198.—)

RONALD SYLVESTER, Appellee, v. THE INDUS-
TRIAL COMMISSION *et al.* (Acme Roofing and
Sheet Metal Company, Appellant).

*Opinion filed July 19, 2001.—Rehearing denied October 1, 2001.*

Garofalo, Schreiber & Hart, Chrtd. (Robert T. Newman, of counsel), and McKenna, Storer, Rowe, White & Farrug (James P. DeNardo, of counsel), all of Chicago, for appellant Acme Roofing & Sheet Metal Co.

Mike McElvain, of Bloomington, for appellee.

Roddy, Leahy, Guill & Zima, Ltd., of Chicago (John H. Guill, of counsel), for *amici curiae* National Roofing Contractors Association *et al.*

Brady, Connolly & Masuda, P.C., of Chicago (Francis M. Brady, of counsel), for *amici curiae* Illinois Manufacturers Association *et al.*

JUSTICE FREEMAN delivered the opinion of the court:

Ronald Sylvester, petitioner, filed a claim under the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 1992)) after he was injured in the course of his employment with Acme Roofing and Sheet Metal Company (Acme). The arbitrator hearing the case determined that petitioner's average weekly wage was $368.43 and awarded him 230 6/7 weeks of temporary total disability (TTD) benefits. The arbitrator's decision was affirmed and adopted by the Industrial Commission, and the circuit court confirmed the Commission. The appellate court reversed the circuit court, holding that the wage computation had been based on an erroneous interpretation of the governing statute, section 10 of the Act (820 ILCS 305/10 (West 1992)). 314 Ill. App. 3d 1100. Acme petitioned this court for leave to appeal (177 Ill. 2d R. 315(a)). We granted leave to appeal and now affirm the judgment of the appellate court.

## BACKGROUND

Before this court the parties only dispute the calculation of petitioner's average weekly wage during the year prior to his injury. Accordingly, we shall limit our discussion to the facts germane to this issue. As background, we note that petitioner's workers' compensation claim arose out of a serious injury in May 1992 when he fell approximately 16 feet to the ground from the raised bed of a truck, shattering both of his ankles. As a result of this accident petitioner's right leg was amputated below the knee, and his left foot was permanently injured. None of these facts are in dispute.

At the hearing before the Industrial Commission, petitioner testified that he had been working for Acme for 19 years before the accident and was not employed by anyone else during that time. At the time of the accident he was a roofer foreman and earned $21 per hour.

Because the winter weather prevented much work being done, he usually signed up for unemployment during the winter. However, Acme put him to work for approximately five hours per week on small jobs such as repairs or leak patching.

Petitioner testified that his job required him to be on call for Acme all week, year-round, and if work were available, he would work a 40-hour week. He stated that when he worked a full week, he worked eight hours per day, five days per week. Petitioner introduced into evidence his union contract, which stated that he had to be paid overtime if he worked more than 10 hours per day or 40 hours per week. The contract also stated that a normal workday would be from 8 a.m. to 4:30 p.m., subject to change by agreement between the employer and employees, and that the lunch period was "one-half hour only." The contract further provided that the regular workweek would "consist of 10-hour or less than the 10-hour work days, Monday through Friday, with a make-up day on Saturday."

Petitioner and Acme both introduced into evidence petitioner's wage records for the 52 weeks prior to his accident. These documents reflected, for each week of the preceding year, the number of hours petitioner had worked and the amount he had earned. The number of hours worked per week varied from 3 to 40, and his weekly pay ranged from $60.75 to $818.25. Petitioner's and Acme's submissions were identical, except that on petitioner's copy he wrote estimates, for each week, of the number of days he had worked that week. Petitioner testified that the estimate was based on the number of hours worked that week. According to petitioner's estimate, he had worked a total of 131 days during the previous 52 weeks.

On the issue of petitioner's earnings, the arbitrator found as follows in the written order. During the 52

weeks from May 21, 1991, to May 20, 1992, petitioner earned a total of $17,684.41, not counting a Christmas bonus of $150. Acme issued defendant paychecks in 48 out of the 52 weeks. Petitioner's average weekly wage was $368.43, a figure at which the arbitrator arrived by dividing petitioner's total pay by 48, the number of weeks in which petitioner received pay. The arbitrator stated that "[t]his calculation follows the method employed by the Court in *Cook v. Industrial Commission*, [231 Ill. App. 3d 729 (1992)]."

Petitioner appealed. As previously noted, the Industrial Commission affirmed and adopted the arbitrator's decision. The circuit court confirmed the Commission. However, the appellate court reversed the circuit court. The appellate court reviewed its previous decisions interpreting section 10 of the Act (820 ILCS 305/10 (West 1992)), and held that the arbitrator had erred in the calculation of petitioner's average weekly wage. The court endorsed its prior decisions to the effect that in order to determine average weekly wage it was necessary to factor out all days which the claimant had lost through no fault of his own. 314 Ill. App. 3d 1100. We granted Acme's petition for leave to appeal. 177 Ill. 2d R. 315(a). We also granted leave to the Illinois Manufacturers Association, Illinois Construction Industry Committees, Illinois Insurance Association, National Roofing Contractors Association, Onesource Building Services, Inc., Yellow Freight System, Cambridge Integrated Services Group, Inc., West Bend Mutual Insurance Company, and Custard Claims Management Services, Inc., to submit briefs as *amici curiae*. 155 Ill. 2d R. 345.

## ANALYSIS

As previously noted, the only dispute is over computation of petitioner's average weekly wage. The parties agree that the case is controlled by section 10 of the Act, which provides as follows:

"The compensation shall be computed on the basis of the 'Average weekly wage' which shall mean the actual earnings of the employee in the employment in which he was working at the time of the injury during the period of 52 weeks ending with the last day of the employee's last full pay period immediately preceding the date of injury, illness[,] or disablement excluding overtime, and bonus divided by 52; but if the injured employee lost 5 or more calendar days during such period, whether or not in the same week, then the earnings for the remainder of such 52 weeks shall be divided by the number of weeks and parts thereof remaining after the time so lost has been deducted. Where the employment prior to the injury extended over a period of less than 52 weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee actually earned wages shall be followed. Where by reason of the shortness of the time during which the employee has been in the employment of his employer or of the casual nature or terms of the employment, it is impractical to compute the average weekly wages as above defined, regard shall be had to the average weekly amount which during the 52 weeks previous to the injury, illness or disablement was being or would have been earned by a person in the same grade employed at the same work for each of such 52 weeks for the same number of hours per week by the same employer." 820 ILCS 305/10 (West 1992).

As the appellate court noted, section 10 provides four different methods for calculating average weekly wage. (1) By default, average weekly wage is "actual earnings" during the 52-week period preceding the date of injury, illness or disablement, divided by 52. (2) If the employee lost five or more calendar days during that 52-week period, "whether or not in the same week," then the employee's earnings are divided not by 52, but by "the number of weeks and parts thereof remaining after the time so lost has been deducted." (3) If the employee's employment began during the 52-week period, the earnings during employment are divided by "the number of weeks and parts thereof during which the employee actu-

ally earned wages." (4) Finally, if the employment has been of such short duration or the terms of the employment of such casual nature that it is "impractical" to use one of the three above methods to calculate average weekly wage, "regard shall be had to the average weekly amount which during the 52 weeks previous to the injury, illness or disablement was being or would have been earned by a person in the same grade employed at the same work for each of such 52 weeks for the same number of hours per week by the same employer."

In this case the parties agree that the arbitrator used the second method, a conclusion made clear by the cite to *Cook*, which only involved the second method of calculation. The parties differ on what to divide earnings by to compute average weekly wage, however. Acme contends that since any week in which the employee worked at least one day is technically a "part" of a week, and the statute provides that earnings are to be divided by the weeks "and parts thereof remaining," weeks in which the employee worked at least one day should be counted the same as a full week of work. Thus, the total wages earned in the previous 52 weeks must be divided by the number of weeks in that time period in which the employee worked even one day. Petitioner contends that the fact finder should count the number of days the claimant worked in the previous 52 weeks, divide that number by the number of days in a workweek, and divide the earnings by the result of this calculation. The arbitrator used the method suggested by Acme, which resulted in petitioner's earnings being divided by 48, as petitioner worked at least one day in all but four of the 52 weeks preceding his injury. By petitioner's argument, his earnings should have been divided by 26.2, as he worked only 131 days during the previous 52 weeks and his workweek was 5 days long—131 divided by 5 equals 26.2.

Normally, a wage determination by the Commission

is a factual finding, and thus will be upheld on appeal unless against the manifest weight of the evidence. *D.J. Masonry Co. v. Industrial Comm'n*, 295 Ill. App. 3d 924, 932 (1998). However, the issue currently before us is solely a matter of statutory construction. Accordingly, our review is *de novo* (*Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 503 (2000)), and we are guided by familiar principles. Our primary goal, to which all other rules are subordinate, is to ascertain and give effect to the intention of the legislature. *Henrich v. Libertyville High School*, 186 Ill. 2d 381, 387 (1998). We determine this intent by reading the statute as a whole and considering all relevant parts. *A.P. Properties, Inc. v. Goshinsky*, 186 Ill. 2d 524, 532 (1999). We must construe the statute so that each word, clause, and sentence, if possible, is given a reasonable meaning and not rendered superfluous (*A.P. Properties, Inc.*, 186 Ill. 2d at 532), avoiding an interpretation which would render any portion of the statute meaningless or void (*McNamee v. Federated Equipment & Supply Co.*, 181 Ill. 2d 415, 423 (1998)). We also presume that the General Assembly did not intend absurdity, inconvenience, or injustice. *Michigan Avenue National Bank*, 191 Ill. 2d at 504. The Workers' Compensation Act is to be interpreted liberally (*McNamee*, 181 Ill. 2d at 428), to effectuate its main purpose—providing financial protection for interruption or termination of a worker's earning power. *Peoria Roofing & Sheet Metal Co. v. Industrial Comm'n*, 181 Ill. App. 3d 616, 620 (1989).

Following these principles, we find Acme's interpretation is refuted by the plain language of section 10. See *Peoria Roofing*, 181 Ill. App. 3d at 620. First, Acme's interpretation is inconsistent with the statutory provision that the second calculation method is to be used whenever the employee lost five or more calendar days, "whether or not in the same week." According to Acme's

interpretation, the average weekly wage changes only if the employee loses five days in the *same* calendar week. Thus, Acme's construction conflicts with the "whether or not in the same week" language, because an employee *must* lose five days in the same week for the second method to produce a different result from the first method.

Acme's interpretation of the second method also conflicts with the concluding phrase, "after the time so lost has been deducted." The clear meaning of this language is that time which an employee does not work must be factored out of the calculation of the average weekly wage. In other words, if in a particular week an employee works on Monday, but not Tuesday through Friday, the latter four days must be "deducted" in calculating his average weekly wage. Acme's interpretation of the statute does not so allow. According to Acme, time is only deducted when it is lost in whole-workweek increments. The clear meaning of the statute is to the contrary.

Our result is supported by the appellate court decisions reviewing determinations of average weekly wage under the second method of section 10 of the Act. See, e.g., *D.J. Masonry Co. v. Industrial Comm'n*, 295 Ill. App. 3d 924 (1998). There, the court considered a workers' compensation claim filed by a masonry worker who had worked only 204 days during the previous 52 weeks. The court confirmed the Commission's calculation of his average weekly wage by dividing his earnings over the previous 52 weeks by 40.8, stating flatly that "this procedure comports with section 10." *D.J. Masonry*, 295 Ill. App. 3d at 933.

Even more similar to the case at bar is *Peoria Roofing*, 181 Ill. App. 3d 616. That case involved a roofer who had been working solely for the respondent during the 52 weeks preceding his accident. He had worked in 43

different weeks, but had worked only 134 days. The Commission determined that the number of weeks used to calculate average weekly wage should be found by dividing the number of days worked by five. The circuit court set aside that decision, recalculating the wage by dividing earnings by the number of weeks including at least one day of work. The appellate court reversed the circuit court, reinstating the Commission's wage calculation. *Peoria Roofing*, 181 Ill. App. 3d at 620-21. The court primarily relied on the fact that, as we have explained above, the circuit court's interpretation of the statute was inconsistent with its plain language and rendered portions of it superfluous.

Acme contends that *Cook* and *Ricketts* support its interpretation of section 10. These cases are distinguishable. *Ricketts* involved a wage calculation under the third provision of section 10, which deals with employment which has extended over less than 52 weeks. See *Ricketts v. Industrial Comm'n*, 251 Ill. App. 3d 809, 811-12 (1993). *Cook* did not involve the question at issue here; rather, the claimant in that case was attempting to extrapolate the number of weeks he had worked from his total wages and claimed hourly wage—of which there was no evidence in the record. See *Cook*, 231 Ill. App. 3d at 730-31. In neither *Cook* nor *Ricketts* was the result based on statutory construction. Rather, both cases were clearly decided on the insufficiency of the evidence the claimant introduced in support of his claimed wage. See *Ricketts*, 251 Ill. App. 3d at 812 ("[b]ased on claimant's failure to provide other credible evidence concerning prior employment, the Commission's determination of his average weekly wage rate comports with the statutory formula"); *Cook*, 231 Ill. App. 3d at 731 ("[g]iven the scant evidence before the Commission, we conclude that its determination of claimant's average weekly wage was not against the manifest weight of the evidence"). Although *Cook*

did continue on to state in *dictum* that the claimant's proposed average weekly formula would be incorrect even if he had introduced sufficient evidence to support it, petitioner in this case is not using the formula proposed in *Cook*. Indeed, in its discussion the *Cook* court frankly recognized that section 10 of the Act "plainly provides that lost time is to be 'deducted' before the number of weeks and parts thereof claimant worked are divided into a claimant's earnings." *Cook*, 231 Ill. App. 3d at 732-33.

Acme urges that petitioner's construction of section 10 provides workers with a "windfall," and makes it more financially advantageous to be injured than to be employed, relying on this court's admonition against such a result in *Hasler v. Industrial Comm'n*, 97 Ill. 2d 46 (1983). We are not persuaded by this argument. First, the situation in this case does not rise to the level of windfall before us in *Hasler*. By our calculations, deducting "lost" time, as required by the statutory scheme, will lead to petitioner's receiving approximately 32% more in TTD benefits than he would have earned as regular wages.[1] By contrast, in *Hasler*, the claimant was advocating for a method of wage computation which would have resulted in her being "awarded an amount almost six times greater than her actual earnings." *Hasler*, 97 Ill. 2d at 52. It is important to note, as well, that it would be inaccurate to state that petitioner receives a 32% "windfall," because his "actual earnings" for purposes of section 10 do not include his yearly bonus, overtime pay,

[1]Petitioner's wages during the previous 52 weeks, as determined by the arbitrator, were $17,684.41. Dividing this number by 26.2 results in an average weekly wage of $674.98. But TTD payments are only $66\frac{2}{3}$% of average weekly wage. 820 ILCS 305/8(b)(2) (West 1992). $66\frac{2}{3}$% of $674.98 is approximately $450 per week, or $23,400 per year. This is approximately 32% greater than $17,684.41. ($23,400-$17,684 = $5,716; $5,716/$17,684.41 = 0.32, or 32%.)

or the unemployment compensation that he regularly earned during the winter months. 820 ILCS 305/10 (West 1992); *Illinois-Iowa Blacktop, Inc. v. Industrial Comm'n,* 180 Ill. App. 3d 885, 893 (1989). When these factors are taken into account, it is difficult to characterize petitioner as having received a financial bonanza when he suffered the two crushed ankles which resulted in the partial amputation of one of his legs.

As was acknowledged in *Ricketts,* although concern over a windfall to the employee remains relevant in computing average weekly wage, it is not determinative. *Ricketts,* 251 Ill. App. 3d at 811. With the exception of the *dictum* in *Cook,* the appellate court has consistently rejected the windfall argument in construing section 10 to exclude lost time from the computation of average weekly wage. See 314 Ill. App. 3d at 1108; *D.J. Masonry,* 295 Ill. App. 3d at 933-34; *Peoria Roofing,* 181 Ill. App. 3d at 620. Section 10 "resulted from negotiations and compromise between business and labor interests." *Illinois-Iowa Blacktop,* 180 Ill. App. 3d at 891. It "both benefits and disadvantages both business and labor," in that although the worker is benefitted by lost time being factored out of average weekly wage, the employer is benefitted by the fact that overtime wages, bonuses and unemployment compensation are excluded from the calculation of the employee's income. *Illinois-Iowa Blacktop,* 180 Ill. App. 3d at 893. We see no reason to upset this carefully crafted legislative scheme.

Acme cites in support of its argument the following comment of Senator Bruce during the Senate debates on House Bill 3250, by which was enacted the current version of section 10:

> "[The bill] redefines the average weekly wage, so that a part-time employee is not paid on a full forty-hour week, but only receives compensation if he works ten hours, he gets two-thirds [*sic*] of his ten-hour actual earnings." 81st Ill. Gen. Assem., Senate Proceedings, July 1, 1980, at 22 (statements of Senator Bruce).

This comment is of little relevance to our analysis. First, the statutory language is clear and unambiguous. When this is the case we must apply the statute without resort to further aids of statutory construction (*Michigan Avenue National Bank*, 191 Ill. 2d at 504), such as legislative debates. Moreover, even if we were to consider the Senator's comment, he would appear to have been referring to the fourth calculation method listed in section 10, the only method which refers to hours worked per week. This statement "has no effect on construction workers," who are accorded "special considerations," because of "the unique nature of their work." *Illinois-Iowa Blacktop*, 180 Ill. App. 3d at 892-93.

Acme also contends that, as in *Cook* and *Ricketts*, petitioner failed to introduce evidence sufficient to support his claim. We see no merit to this contention. Petitioner testified that he worked only for Acme, that he was required to be on call all week, year-round, and that when work was available, he worked a 40-hour week. He also testified that when he worked a full week, he worked eight hours per day, five days per week. For each week he worked he estimated the number of days he worked, based on the number of hours he worked. This testimony was supported by the union contract, which stated that the regular workweek went from Monday through Friday with a make-up day on Saturday, and also stated that a normal workday was from 8 a.m. to 4:30 p.m., with a half-hour for lunch. Although some of the provisions of the union contract were subject to change by mutual agreement between employer and employees, Acme introduced no evidence of any changes during the year preceding petitioner's injury. Nor did Acme introduce any evidence to counter petitioner's estimates of the number of days that he had worked. We believe there was sufficient unrebutted evidence to establish a 5-day, 40-hour workweek in general, and to establish the exact number of days worked.

Acme finally contends that we could confirm the Commission by looking to the fourth calculation method listed in section 10, which allows "regard [to] be had to the average weekly amount which during the 52 weeks previous to the injury, illness or disablement was being or would have been earned by a person in the same grade employed at the same work for each of such 52 weeks for the same number of hours per week by the same employer" if it is "impractical" to use any of the other methods listed in section 10 because of the brevity or casual nature of the employment relationship. 820 ILCS 305/10 (West 1992). We see no basis for resort to the fourth method. Acme does not even suggest why computation according to the other methods would be impractical. Morever, Acme introduced absolutely no evidence of what "would have been earned by a person in the same grade employed at the same work for each of such 52 weeks for the same number of hours per week by the same employer." Acme suggests, instead, that this can be inferred from what petitioner himself earned. This suggestion merely highlights why the fourth method is inapplicable in this case. The point of the fourth method is clearly to allow an employer to demonstrate how much an established employee would have earned, when the petitioner's work situation does not provide a sufficiently reliable basis to so find. To contend that petitioner's own earnings are reliable evidence of yearly earnings is to establish that the fourth method need not be used. We reject this argument as well.

## CONCLUSION

For the reasons above stated, we affirm the judgment of the appellate court.

*Affirmed.*