MASON MANUFACTURING, INC., Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Christopher Flanagan, Appellee).

Fourth District (Industrial Commission Division)   No. 4—01—0876WC

Argued May 22, 2002.—Opinion filed June 21, 2002.—Rehearing denied July 23, 2002.

576

McCULLOUGH, P.J., specially concurring, joined by O'MALLEY, J.

Jonathan J. Heiple (argued), of Heiple Law Offices, of Peoria, for appellant.

Ryan L. Baker (argued), of McCarthy, Rowden & Baker, of Decatur, for appellee.

JUSTICE RARICK delivered the opinion of the court:

Claimant, Christopher Flanagan, sought benefits pursuant to the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 1998)) for injuries sustained while in the employ of Mason Manufacturing, Inc. (Mason). Flanagan injured his left knee when he fell from a ladder. Flanagan's primary employment was with the Norfolk and Southern railroad. Mason was a secondary job at which Flanagan worked occasionally. Mason was aware of Flanagan's employment with the railroad and that such job was his primary employment. Flanagan had worked for Mason four or five times during the previous five years. He would work several days to several weeks. His current session of employment was in its fourth day when the accident occurred. Prior to the current session, Flanagan had not worked for Mason for several years.

As a result of his injuries, the arbitrator determined that Flanagan could not return to his former employment either at the railroad

or at Mason. Pursuant to section 10 of the Act, the arbitrator determined Flanagan's average weekly wage by adding the $420 Flanagan had earned while working for Mason, which represented one week's pay, with the $35,418.37 he earned working for the railroad, for a total of $35,838.37. The arbitrator divided this sum by 52 to reach an average weekly wage of $689.20. The arbitrator also ordered Mason to pay weekly maintenance benefits in the amount of $459.47 until Flanagan completed a computer-aided drafting degree at the local community college.

The Industrial Commission (Commission), with one commissioner dissenting, modified the decision of the arbitrator, finding that Flanagan's average weekly wage was $1,101.12. The Commission divided the $35,418.37 Flanagan earned working for the railroad by 52, giving an average weekly wage of $681.12. It then divided the $420 Flanagan earned for one week's work at Mason by one, to determine an average weekly wage of $420. The Commission then added these two figures to derive a total average weekly wage of $1,101.12.

The Commission's decision was confirmed by the circuit court of Macon County.

On appeal, Mason argues that the Commission erred in determining Flanagan's average weekly wage. Mason maintains that Flanagan's employment with it was sporadic in nature and of limited duration, and that the Commission's award results in a windfall to Flanagan.

■ Section 10 of the Act provides in pertinent part:

"The compensation shall be computed on the basis of the 'Average weekly wage' which shall mean the actual earnings of the employee in the employment in which he was working at the time of the injury during the period of 52 weeks ending with the last day of the employee's last full pay period immediately preceding the date of injury, illness or disablement excluding overtime, and bonus divided by 52 ***. Where the employment prior to the injury extended over a period of less than 52 weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee actually earned wages shall be followed. Where by reason of the shortness of the time during which the employee has been in the employment of his employer or of the casual nature or terms of the employment, it is impractical to compute the average weekly wages as above defined, regard shall be had to the average weekly amount which during the 52 weeks previous to the injury, illness or disablement was being or would have been earned by a person in the same grade employed at the same work for each of such 52 weeks for the same number of hours per week by the same employer. *** When the

employee is working concurrently with two or more employers and the respondent employer has knowledge of such employment prior to the injury, his wages from all such employers shall be considered as if earned from the employer liable for compensation." 820 ILCS 305/10 (West 1998).

In *Sylvester v. Industrial Comm'n*, 197 Ill. 2d 225, 756 N.E.2d 822 (2001), our supreme court noted that section 10 provides four methods of calculating average weekly wage: (1) by default, average weekly wage is "actual earnings" during the 52-week period preceding the date of injury, illness or disablement, divided by 52; (2) if the employee lost five or more calendar days during that 52-week period, "whether or not in the same week," then the employee's earnings are divided not by 52, but by "the number of weeks and parts thereof remaining after the time so lost has been deducted"; (3) if the employee's employment began during the 52-week period, the earnings during employment are divided by "the number of weeks and parts thereof during which the employee actually earned wages"; and (4) if the employment has been of such short duration or the terms of the employment of such casual nature that it is "impractical" to use one of the other three methods to calculate average weekly wage, "regard shall be had to the average weekly amount which during the 52 weeks previous to the injury, illness or disablement was being or would have been earned by a person in the same grade employed at the same work for each of such 52 weeks for the same number of hours per week by the same employer." *Sylvester*, 197 Ill. 2d at 230-31.

In determining Flanagan's average weekly wage, the Commission relied on *Village of Winnetka v. Industrial Comm'n*, 250 Ill. App. 3d 240, 621 N.E.2d 150 (1993). In *Village of Winnetka*, the claimant worked as a trash collector for the village. He had a second job as a limousine driver for Lois Limo. The parties stipulated that the claimant's average weekly wage from his employment with the village was $540.90. The claimant had also earned $1,662.64 in nine weeks working for Lois Limo. The Commission determined the claimant's average weekly wage with Lois Limo to be $184.74. The Commission arrived at this figure by dividing the $1,662.64 he had earned with Lois Limo by nine, the number of weeks he had worked there. The Commission then added $184.74 to $540.90 to arrive at an average weekly wage of $725.64.

On appeal, the village argued that the Commission should have added the $1,662.64 claimant had made at Lois Limo to the $28,126.80 that he had made working for the village during the previous 52 weeks of employment, and divided that total by 52 weeks for an average

weekly wage of $572.97. Noting that such a calculation would result in a second job average weekly wage of $31.97, we rejected the village's argument, finding that this figure did not fairly represent the claimant's earning power at the time of his injury.

*Village of Winnetka* clearly supports the Commission's rejection of the method the arbitrator used in determining Flanagan's average weekly wage. As the Commission noted, the method of determining Flanagan's average weekly wage used by the arbitrator and advocated by Mason would result in an absurdly low second job average of only $8.08 per week. Such a figure bears no relation to Flanagan's earning power at the time of his injury. Nevertheless, Mason continues to advocate the method used by the arbitrator, arguing that *Village of Winnetka* is inapposite. Mason contends that unlike the present case, there is no indication in *Village of Winnetka* that the claimant's second employment was sporadic or not of an ongoing nature. Mason maintains that while the Commission in *Village of Winnetka* apparently used the third method in determining the claimant's average weekly wage, the first method is appropriate for the present case because there is a full record of Flanagan's earnings with Mason for the 52 weeks preceding his injury.

Mason's arguments are not persuasive. The first method of calculating average weekly wage set forth in section 10 is inappropriate because Flanagan had not worked for Mason for a full year. The first method set forth in section 10 determines average weekly wage as "the actual earnings of the employee *in the employment in which he was working at the time of the injury* during the period of 52 weeks *** divided by 52." (Emphasis added.) 820 ILCS 305/10 (West 1998). The employment in which Flanagan was working at the time of his injury was with Mason. Mason's position is in conflict with the language of the statute. Even if Mason's position could be reconciled with the language of the statute, we believe that in cases of concurrent employment, the better practice is to determine the average weekly wage of each job separately, by the method appropriate to that job, then add the averages together to determine the average weekly wage.

■ The issue then becomes which method should be utilized in determining Flanagan's average weekly wage for his employment with Mason. The first and second methods are not appropriate because Flanagan had not worked for Mason for a full year when the accident happened. Under the third method, where the employee's earnings are divided by the number of weeks and parts thereof during which the employee actually earned wages, the $420 Flanagan earned would be divided by one, the number of weeks he had worked, resulting in an

average weekly wage of $420 for his employment with Mason. This is the result reached by the Commission. The same result is obtained by using the fourth method, where "regard shall be had to the average weekly amount which during the 52 weeks previous to the injury *** was being *** earned by a person in the same grade employed at the same work for each of such 52 weeks for the same number of hours per week." 820 ILCS 305/10 (West 1998).

Mason relies on *Ricketts v. Industrial Comm'n*, 251 Ill. App. 3d 809, 623 N.E.2d 847 (1993), arguing that, consistent with the reasoning in *Ricketts*, it was appropriate for the arbitrator to divide Flanagan's total earnings by 52 weeks based upon the language of the first method of calculation outlined in section 10 and the evidence regarding the limited nature of Flanagan's secondary employment with Mason. In *Ricketts*, the claimant was injured after working a total of four days over a three-week period. The Commission determined the claimant's average weekly wage by inferring that he had worked eight hours each of the four days he was employed, which it then multiplied by his union scale wage and divided by three to arrive at an average weekly wage of $158.40. The circuit court reversed and calculated the claimant's average weekly wage at $594 by multiplying the claimant's hourly wage by eight hours a day for five days. This court reinstated the decision of the Commission. After noting that the Commission calculated the wage rate by the second method listed in section 10, we held that the Commission's determination comported with the statutory formula.

*Ricketts* does not support Mason's position. In *Ricketts*, the Commission divided the claimant's earnings by the number of weeks that he had worked. Applying the same method of calculation to the present case would yield a second job average of $720.

Arguably, the Commission's decision results in a substantial windfall to Flanagan, a result we criticized in *Cook v. Industrial Comm'n*, 231 Ill. App. 3d 729, 596 N.E.2d 746 (1992). In *Cook*, which did not involve concurrent employment, the claimant had worked during 24 different weeks during the preceding year and had earned $10,266.42. There is no indication in the record regarding how many days he worked during those weeks or how many hours per day he worked. The arbitrator divided $10,226.42 by 24 for an average weekly wage of $427.77. The Commission affirmed the arbitrator's decision, and the decision of the Commission was confirmed by the circuit court. On appeal, the claimant argued that his actual hours worked should have been divided by 40 and this amount multiplied by his hourly wage, which would result in an average weekly wage of $621.20. We rejected the claimant's argument, finding that such an interpretation

of section 10 would result in a windfall to the claimant and he would receive substantially more per week than he actually earned while employed.

Determination of an employee's average weekly wage is often problematic because, as we noted in *Village of Winnetka*, the methods of determining the average weekly wage set forth in section 10 are somewhat ambiguous and often are not readily applicable to the facts of the case at hand. Creating a more workable framework for determining average weekly wage is the province of the legislature, however, not the courts. All the courts can do is interpret the statute and apply it to the facts at hand so as to best achieve the results our legislature intended.

For the foregoing reasons, the judgment of the circuit court of Macon County is affirmed.

Affirmed.

HOFFMAN and HOLDRIDGE, JJ., concur.

PRESIDING JUSTICE McCULLOUGH, specially concurring:

I agree with the majority in its position that the better practice to determine average weekly wage where there are two jobs is by looking at each job separately by the method appropriate to that job and then add the two averages together to determine the average weekly wage. I also believe it is important to stress the finding of the majority that creating a more workable framework is the province of the legislature and not for the courts.

I write this special concurrence to point out that the Commission did, in its wisdom, have substantial evidence presented with respect to the claimant's employment history. The Commission found that the evidence regarding the claimant's employment history was uncontradicted and that he had worked since he was 16 years old, consistently working more than one job at a time and more specifically in the five years preceding the accident he continued to consistently work at two or more jobs, concurrently working 95 to 100 hours per week. Based upon the claimant's testimony, along with that of Wesley Mason and rehabilitation counselors John Stephen Dolan and Sherry Anderson, the Commission found that the claimant worked continuously full time for the respondent from 1989 to 1992, when he obtained full employment with Norfolk and Southern Railroad, where he has worked continuously since that time. The Commission also found that while he was working for respondent from 1989 to 1992 and prior to his going to work for the railroad, he also worked for a tree service

582

and continued to work at that tree service at least intermittently since the beginning of employment with the railroad up to the time of the accident herein. The evidence further showed that at times from 1992 to 1998 he had concurrent employment with three employers, being the railroad, respondent and Romer's. There was also evidence that he worked for another lawn service, Walker's Lawn Service, earning $7 per hour, and had begun that work in May 1998.

Determining which formula in section 10 as to average weekly wage should be used is difficult in many cases. We should defer to the Commission in its determination of the weekly average wage if we can find it consistent with the provisions of section 10.

Justice O'Malley joins in this special concurrence.