THE CITY OF ALTON, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Stephen A. Britt, Appellee).

Fifth District (Industrial Commission Division)   No. 5—91—0248WC

Opinion filed June 2, 1992.—Rehearing denied August 4, 1992.

Matthew W. Kelly, of Coppinger, Carter, Schrempf & Blaine, Ltd., of Alton, for appellant.

William S. Beatty, of Edwardsville, for appellee.

JUSTICE STOUDER delivered the opinion of the court:

Claimant, Stephen Britt, filed an application for adjustment of claim pursuant to the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1989, ch. 48, par. 138.1 *et seq.*). Claimant sought damages for injuries sustained while employed by the City of Alton (employer). Following a hearing, the arbitrator awarded claimant 20% permanent partial disability to the person as a whole, pursuant to section 8(d)(2) of the Act (Ill. Rev. Stat. 1989, ch. 48, par. 138.8(d)(2)), along with temporary total disability benefits for 28⁵/₇ weeks.

Claimant subsequently filed a petition pursuant to section 19(h) of the Act (Ill. Rev. Stat. 1989, ch. 48, par. 138.19(h)) seeking an additional 30% of a man as a whole along with further temporary total disability benefits. After a hearing, the Industrial Commission (Commission) awarded an additional 38¹/₇ weeks of temporary total disability benefits and an additional 20% of a man as a whole in permanent partial disability benefits. The circuit court of Madison County confirmed the Commission and employer appeals.

The record in the instant case shows claimant, while working as a police officer for employer, was injured in a training exercise, sustaining neck injuries on December 22, 1983. Claimant sought treatment from his family physician, Dr. Raymond Weber. Dr. Weber prescribed a conservative course of treatment of anti-inflammatory drugs and physical therapy. On May 25, 1984, after numerous visits with Dr. Weber, claimant was referred to a neurosurgeon, Dr. Robert Dunn. Dr. Dunn advised claimant to pursue light-duty work and avoid strenuous activity.

Claimant last saw Dr. Weber on November 29, 1984, at which time he was complaining of weakness, and pain and spasms in the right arm. He also complained of having a great deal of difficulty in performing normal activities. Dr. Weber believed claimant suffered a significant neck strain consistent with a possible herniated disc.

He then referred claimant to Dr. John Gragnani, a physical medicine and rehabilitation specialist.

EMG testing performed by Dr. Gragnani revealed some damage in the right extensor muscle on the right arm, the muscle supplied by the sixth and seventh cervical nerve roots. Dr. Gragnani put claimant on a series of exercises and, when these did not improve his condition, ordered a CT scan. The CT scan revealed a bulging disc or possible herniation suspected at C6-7 on the left side.

The initial arbitration hearing was held November 28, 1986. Claimant testified that he was suffering from pain in his neck, limitation in his ability to turn his neck, and a variety of other symptoms. Claimant testified he was advised to have neck surgery, but that he declined out of fear that the surgery would be unsuccessful. Following this, claimant had no further medical treatment prior to arbitration.

Following the hearing on arbitration, the arbitrator concluded claimant was entitled to 20% permanent partial disability to the person as a whole, pursuant to section 8(d)(2) of the Act, as well as temporary total disability benefits.

On November 22, 1988, a hearing was held on claimant's section 19(h) petition. Claimant testified to symptoms he has suffered since the initial arbitration. At the outset, claimant related that he suffers from fierce headaches that have transformed him into "someone living on codeine." He also described how he now has a more pronounced weakness in his left arm whereas prior to arbitration he had lost strength in his right arm. Claimant noted that this change occurred around January 1986.

Claimant further related that he decided to finally have surgery due to the headaches and various other debilitating symptoms he suffered from. He noted that he feels somewhat stronger since the surgery but still suffers from occasional headaches. He no longer has full range of motion with his neck and sleeps with a neck brace.

Dr. Dennis Mollman, a neurosurgeon who performed surgery on claimant in October 1987, testified at the hearing on review. Dr. Mollman related that he first saw claimant in September 1987 in connection with his admission to the hospital for the myelogram and CT scan. On that occasion, claimant complained of some numbness and intermittent tingling in both his right and left hands, along with pain in his neck and shoulders. After reviewing the results from the myelogram and CT scan, Dr. Mollman concluded claimant had herniated discs at C5-6 and C6-7 and arthritic changes in his neck. As a result, Dr. Mollman had claimant admitted to the

hospital in October 1987 for a cervical fusion and discectomy at those levels.

Dr. Mollman further testified that claimant was seen by him for follow-up visits in November and December 1987 and April 1988. Dr. Mollman explained that claimant had no complaints of pain and no sensory deficit as of November 1987. As for the December follow-up visit, claimant stated that the arm and shoulder pain had been resolved as had the numbness in his right hand. Dr. Mollman concluded that claimant was asymptomatic at that time. In April 1988, Dr. Mollman noted claimant continued to have no problems with his neck and upper extremities. As of his last visit to Dr. Mollman's office, claimant was to return on an as-needed basis and no medication had been prescribed for pain. Furthermore, it was Dr. Mollman's impression that the surgery performed on claimant was a complete success.

Dr. Phillip George, an orthopedic surgeon, testified on behalf of the employer at the hearing on review. Dr. George examined claimant in May 1985 prior to arbitration and again in August 1988 prior to the hearing on review. At the August 1988 examination, claimant told Dr. George that his condition was improving but that he did have complaints regarding diffuse aching in his left arm along with numbness in his left thumb and index finger. Claimant did not complain of headaches at that time.

Dr. George's physical examination of claimant revealed some restricted range of motion, of about 30% in all planes, in claimant's cervical spine. There was no muscle spasm, and claimant had a full range of motion in both upper extremities. Also, his deep-tendon reflexes were present at the elbows, and he had good strength in both hands along with normal intrinsic functioning of both hands.

Dr. George found that claimant was clinically stable and that his condition could improve slightly over the next several months. He also felt claimant was not in need of any further orthopedic care and that claimant could return to work, though not as a policeman.

Dr. George concluded that claimant's condition had improved between May 1985 and August 1988. He felt that while claimant was having some problems with his left upper extremity, those problems were less severe than the previous problems claimant experienced in his right upper extremity. He testified that the surgical procedure could have caused the symptoms in the left arm, but there was no objective evidence of injury to the left upper extremity. He concluded that the operation was fairly successful.

Initially, we address whether the Commission's awarding additional permanent partial disability benefits was against the manifest weight of the evidence.

■■ The purpose of a section 19(h) proceeding is to determine whether a claimant's disability has changed since the time of the original decision by the Commission. (*Howard v. Industrial Comm'n* (1982), 89 Ill. 2d 428, 433 N.E.2d 657.) The change in the condition of the claimant must be a material one. *Zimmerly Construction Co. v. Industrial Comm'n* (1972), 50 Ill. 2d 342, 278 N.E.2d 789.

Employer asserts that it is clear that while claimant's exact diagnosis was not established at the original hearing, his medical condition, with respect to the herniated discs, did not change between the initial hearing and the section 19(h) hearing, except for the fact that surgery was performed and a precise diagnosis was established. Indeed, Dr. Gragnani was of the impression that the entire diagnosis was not made initially because the technology to make such a diagnosis has improved in the interim and that claimant did not have a sufficient diagnostic workup prior to the initial hearing.

In addition, employer points out that the only two doctors who testified at both the initial hearing and the section 19(h) hearing found that claimant's physical condition had actually improved following surgery. Dr. Gragnani specifically felt that the surgery was successful in reducing claimant's symptoms, in improving his physical condition, and in protecting him from further damage to his cervical spine. Dr. George also found a great improvement in claimant's physical condition following surgery. He noted that this improvement included claimant's objective findings as well as his subjective complaints.

■■ From this evidence, we find the claimant has not sustained a material increase in his disability justifying the granting of a section 19(h) petition. The record shows that claimant's complaints of pain, although somewhat different than those articulated at the initial arbitration, have actually improved since the time of the initial arbitration. The medical evidence further reflects that claimant's physical condition has improved since arbitration. Moreover, there seems to be no dispute among the doctors who testified at the section 19(h) hearing that claimant's condition has improved and, while the symptoms he now feels may differ from what he felt at the initial arbitration, they are not materially greater than they were at arbitration.

Further, the employer argues the Commission erred in granting additional temporary total disability benefits to claimant. However,

we need not address this contention in lieu of our decision regarding partial disability benefits.

For the foregoing reasons, we reverse the judgment of the circuit court of Madison County confirming the Industrial Commission's granting the claimant's section 19(h) petition.

Reversed.

McCULLOUGH, P.J., and WOODWARD, H. LEWIS, and RAKOWSKI, JJ., concur.