WORLD COLOR PRESS, Appellant, v. THE INDUSTRIAL COMMISSION
*et al.* (Thomas L. Young, Appellee).

Fifth District (Industrial Commission Division)   No. 5—92—0503WC

Opinion filed June 11, 1993.—Rehearing denied September 17, 1993.

James M. Gallen, of Evans & Dixon, of St. Louis, Missouri, for appellant.

Richard K. Johnson and Harold A. Katz, both of Katz, Friedman, Schur & Eagle, of Chicago, for appellee.

JUSTICE RARICK delivered the opinion of the court:

Claimant, Thomas J. Young, sought benefits pursuant to the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1989, ch. 48, par. 138.1 *et seq.*) for injuries to his right hand, which occurred in the course of his employment as a maintenance worker for World Color Press.

On June 16, 1981, Young was repairing a book strapper when he caught his right hand in a machine clamp. His hand was trapped for approximately one minute, and upon release, it began to swell and his fingers grew numb.

Young initially underwent two surgeries, the last of which was on September 2, 1982. Young sought benefits pursuant to the Act, and on January 1, 1984, the arbitrator awarded Young 20²/₇ weeks of temporary total disability (TTD) and 30% permanent partial disability to his right hand. No review by either party was requested.

The condition of Young's hand continued to grow worse, and a third surgery was performed. On November 28, 1984, Young was referred to Dr. Nashaat Naam, a hand specialist, by World Color Press' insurance agent. Based on various diagnostic tests, Dr. Naam made a preliminary diagnosis that Young had severe neuropathy of the right ulnar nerve and that a fourth surgery would be required. This surgery was performed on March 22, 1985, and Dr. Naam recommended that Young remain off work until May 19, 1985.

World Color Press required Young to return to work earlier than this, and Young continued to worsen to the point where Dr. Naam felt he could no longer treat him effectively. Both Dr. Naam and World Color Press recommended that Young seek treatment at a better-equipped medical facility.

On April 22, 1987, Young saw Dr. V. Leroy Young, a specialist in plastic and reconstructive surgery. Dr. Young had a bone scan performed, which revealed degenerative changes involving the right third metacarpal-phalangeal joint, the left fifth proximal interphalangeal joint and the right hamate. Dr. Young performed a fifth surgery, a luno-triquetra fusion with a metallic screw and excision of the triangular fibrocartilage of the right wrist on June 9, 1987, at Barnes Hospital in St. Louis, Missouri.

Young was subsequently evaluated by Dr. William Hart at the request of World Color Press. Dr. Hart noted that Young complained of numbness of the fingers and pain in his right wrist whenever he moved it. Dr. Hart concluded that Young's condition was related to the 1981 injury and recommended physical therapy prior to Young's returning to work.

Young was finally released for work on January 25, 1988. Upon returning to work, Young began experiencing an extreme amount of right-hand pain, a decrease in finger operations, and an inability to move his right hand laterally. X rays conducted on February 17, 1988, failed to reveal any definite evidence of luno-triquetra fusion, and on March 2, 1988, Dr. Young took Young off work.

Young again returned to work on June 27, 1988. He continued to experience pain in his right hand, numbness, and tingling, excruciating pain in his right wrist where the screw was positioned. Young was also unable to do any heavy lifting and could sleep for no more than one or two hours without feeling a burning pain extending from his fingers to his elbow.

Dr. Young evaluated Young in 1989 and concluded that he had undergone significant adverse changes and suffered a material increase in disability since 1983. Dr. Young indicated the loss of use in the right hand and wrist was permanent but qualified that conclusion with the stipulation that Young might require additional surgery to correct any further complaints of pain.

On May 3, 1985, Young filed a petition for review of this award pursuant to sections 19(h) and 8(a) of the Act (Ill. Rev. Stat. 1985, ch. 48, pars. 138.19(h), 138.8(a)), alleging that his disability had increased and that World Color Press was liable for his additional medical expenses. By this time, the 20²/₇-week TTD award of January 1, 1984, had expired. A hearing on review was held on August 25, 1989. On the review proceedings stipulation form, Young indicated "nature and extent" and "TTD" as the issues in dispute. World Color Press claimed no issues in dispute. Additionally, World Color Press paid the TTD benefits which accrued after the arbitrator's hearing.

On June 13, 1991, the Industrial Commission (Commission) ruled that Young's disability had materially increased since the 1983 arbitration hearing and that the extent of Young's permanent loss of use of his right hand had increased to 50%. The Industrial Commission increased Young's permanent partial disability award to 50% pursuant to section 19(h) and awarded 57⁴/₇ weeks of temporary total disability benefits pursuant to section 8(b). The circuit court affirmed the decision of the Commission, ruling that in a section 19(h) proceeding, TTD benefits are available if the petitioner sustains his burden of proving a material increase in the permanent disability.

On appeal, World Color Press argues that it was improper to award TTD benefits for a period occurring after a prior determination of permanent partial disability. World Color Press contends that the

additional 20% permanent partial disability award fully compensated Young for the additional loss of earning capacity.

■ Section 19(h) of the Workers' Compensation Act provides in pertinent part:

> "An agreement or award under this Act providing for compensation in installments, may at any time within 18 months after such agreement or award be reviewed by the Commission at the request of either the employer or the employee, on the ground that the disability of the employee has subsequently recurred, increased, diminished or ended.
>
> However, as to accidents occurring subsequent to July 1, 1955, which are covered by any agreement or award under this Act providing for compensation in installments made a result of such accident, such agreement or award may at any time within 30 months after such agreement or award be reviewed by the Commission at the request of either the employer or the employee on the ground that the disability of the employee has subsequently recurred, increased, diminished or ended.
>
> On such review, compensation payments may be re-established, increased, diminished or ended." Ill. Rev. Stat. 1989, ch. 48, par. 138.19(h).

In *Briggs Manufacturing Co. v. Industrial Comm'n* (1989), 212 Ill. App. 3d 318, 570 N.E.2d 1152, upon which World Color Press relies, the arbitrator awarded claimant TTD benefits for 17²/₇ weeks. On review, the Industrial Commission modified the arbitrator's award and found that claimant was permanently partially disabled to the extent of 2% and affirmed the 17²/₇ weeks' TTD benefits. Approximately one year later, claimant filed a section 19(h) petition alleging that since the Commission's decision she had become further temporarily totally disabled and that the degree of her permanent disability had increased. The Commission found that claimant had failed to prove that she had sustained a material increase in her permanent disability but nevertheless awarded additional TTD benefits for 45⁵/₇ weeks. The court in *Briggs* reversed the Commission's award of additional TTD, holding that the Commission's prior finding that claimant was permanently disabled to the extent of 2% "was tantamount to a decision that she had recovered as much as the character of her injury would permit" and that it was "improper *** for the Commission to award the petitioner TTD benefits for the period following the stabilization of her injury." (*Briggs*, 212 Ill. App. 3d at 321, 570 N.E.2d at 1153.)

As the court in *Briggs* noted:

"It is well settled that TTD benefits are available only from the time an employee is injured until he has recovered as much as the character of his injury will permit. [Citation.] Temporary incapacity might be described as the period of the healing process. [Citation.] Once the Commission concludes that the petitioner's condition has stabilized and that the permanent nature of the injury can be assessed, an award of temporary total disability is no longer appropriate under section 19(h). [Citation.] Whether an employee has sustained an injury which renders him permanently disabled is a question of fact to be resolved by the Commission." *Briggs*, 212 Ill. App. 3d at 320-21, 570 N.E.2d at 1153.

Unlike *Briggs*, however, the Commission in the present case found that Young had proven a material increase in the degree of his permanent partial disability, and this is the distinction between the present case and *Briggs*. World Color Press argues that this distinction is not relevant and that the *Briggs* decision is based exclusively on the proposition that once the Commission finds a petitioner permanently disabled no further TTD benefits[1] can be awarded. World Color Press maintains that an award of permanent partial disability conclusively presumes a loss of earning capacity, the exact manifestation of which is unknown at the time the award is made. The permanent partial disability award essentially constitutes complete payment in advance for the total amount of this lost earning capacity, regardless of the form it takes. To award TTD in addition, World Color Press contends, in effect allows a double recovery for lost earning capacity.

What World Color Press overlooks in its argument is that where a petitioner's condition continues to degenerate, resulting in an increase in permanent disability, there can be an additional period of temporary incapacity associated therewith. In the present case, Young required several additional surgeries to restabilize a condition previously thought to be permanent, but which became unstable and continued to degenerate. This continuing degeneration carried with it an additional temporary incapacity which was properly compensable by an award of TTD benefits.

This interpretation is in keeping with the spirit and purpose of the Act:

"The Workers' Compensation Act is a humane law of a remedial nature. [Citation.] The underlying purpose of the Act is to provide financial protection for workers whose earning power is interrupted or terminated as a consequence of injuries arising out of and in the course of their employment.

Remedial legislation should be construed liberally to effectuate its purposes. [Citation.] Since section 19(h) seeks to redress changes in circumstances after the entry of a compensation award payable in installments, it is particularly remedial in nature and should be construed liberally so as to allow review of alleged changes in circumstances." *Hardin Sign Co. v. Industrial Comm'n* (1987), 154 Ill. App. 3d 386, 389-90, 506 N.E.2d 1066, 1069.

To deny the availability of TTD benefits where the evidence establishes an increase in the degree of permanent disability and a concomitant temporary incapacity would frustrate the purpose of the Act.

For the foregoing reasons, the judgment of the circuit court of Shelby County is affirmed.

Affirmed.

McCULLOUGH, P.J., and RAKOWSKI, WOODWARD, and STOUDER, JJ., concur.