PAUL POORE, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Auto Parts Unlimited, Appellee).

Fourth District (Industrial Commission Division) No. 5—97—0223WC

Argued April 22, 1998.—Opinion filed September 8, 1998.

Warren E. Danz (argued), of Peoria, for appellant.

Carl Kessinger (argued), of Evans & Dixon, of St. Louis, Missouri, for appellee.

JUSTICE RAKOWSKI delivered the opinion of the court:

Claimant, Paul Poore, filed a petition for review pursuant to sections 8(a) and 19(h) of the Workers' Compensation Act (Act) (820 ILCS 305/8(a), 19(h) (West 1996)), requesting that the Industrial Commission (the Commission) modify a previous decision. Specifically, claimant asked the Commission to increase his permanent partial disability (PPD) benefits, grant him additional temporary total disability (TTD) benefits, and award him an additional reimbursement for medical expenses. The Commission granted claimant's request for further reimbursement for medical expenses and denied claimant's requests for an increase in PPD benefits as well as an additional award of TTD benefits. Claimant appealed to the circuit court of Macon County, which confirmed the Commission. We affirm the denial of PPD benefits, but we reverse the denial of additional TTD benefits and remand for further proceedings.

## I. FACTS

On January 8, 1988, claimant sustained severe burns arising out of and in the course of his employment with Auto Parts Unlimited (employer). Claimant suffered burns over 46% of his body, covering the majority of claimant's lower body and extremities. On April 21, 1990, the arbitrator awarded petitioner TTD benefits of $160 per week for $85^1/2$ weeks pursuant to section 8(b) of the Act as well as PPD benefits of $144 per week for 250 weeks for claimant's permanent loss of 50% of a man as a whole pursuant to section 8(d)(2) of the Act. 820 ILCS 305/8(b), 8(d)(2) (West 1996). Both parties appealed to the Commission, and, on February 26, 1991, the Commission modified the arbitrator's award, awarding claimant TTD benefits for $76^5/7$ weeks instead of $85^1/2$ weeks. Neither party appealed this determination.

After the Commission's decision, claimant still required additional medical treatment for the burns he sustained in 1988. The back side of claimant's left calf developed a neuroma and an ulceration. Dr. Ernest Clyde Smoot III, claimant's plastic surgeon, corrected this problem in December 1990.

In addition, as a result of the treatment of claimant's burns, his left heel no longer met the ground when he walked, causing claimant to walk on his toes instead of his entire left foot. Claimant's abnormal gait caused sores and calluses to develop on the bottom of his left foot. Consequently, claimant limped and was in constant pain due to his condition.

Dr. Smoot referred claimant to Dr. John R. Fisk, an orthopedic

surgeon, to address claimant's left heel condition. Dr. Fisk determined that claimant suffered from an equinus contracture of the left ankle, or in other words, claimant's Achilles tendon had "shortened." This condition decreased dorsiflexion by 18 degrees. Because claimant was falling often as well, Dr. Smoot also referred claimant to Dr. Gelber, a neurologist. Having determined that claimant's problem was mostly mechanical and not neurological, Dr. Gelber quit treating claimant, and claimant returned to Dr. Fisk for treatment.

Dr. Fisk initially attempted to cure claimant's condition by using casts to stretch the Achilles tendon. However, because the casts excessively irritated claimant's leg, claimant opted to undergo surgery, which was successful.

Dr. Fisk asserted that, after recovery from the surgery, claimant had a normal gait. Similarly, Dr. David J. Fletcher testified that the tendon surgery increased the range of motion of claimant's left foot. He also opined that claimant's disability status had not changed from the original arbitration of his claim, although claimant testified that his problems have recurred. Dr. Fisk, Dr. Smoot, and Dr. Fletcher all agreed that claimant's tendon condition and the subsequent need for surgery were causally related to claimant's burn accident.

The Commission did not make any findings regarding the time span that claimant was totally incapacitated due to the above treatments. However, the evidence shows that Dr. Gelber first released claimant from work in February 1991 and that Dr. Fisk believed claimant was physically able to return to work on August 5, 1991. The record also shows that, on behalf of claimant, Mrs. Poore requested a written release to work on November 29, 1991.

## II. DISCUSSION

### A. *Permanent Partial Disability Benefits*

■ At oral argument, claimant argued that the Commission erred by failing to award an increase in PPD benefits. However, after careful review of claimant's argument in his appellate brief, we conclude that claimant only raised the issue of whether the Commission properly denied additional TTD benefits. As such, we deem claimant's argument regarding an increase in PPD benefits waived. 155 Ill. 2d R. 341(e)(7) ("Points not argued [in appellant's brief] are waived [by appellant] and shall not be raised in the reply brief, in oral argument, or on petition for rehearing"); *Archer Daniels Midland Co. v. City of Chicago*, 294 Ill. App. 3d 186, 190, 689 N.E.2d 392, 395 (1997).

Even assuming *arguendo* that this argument has not been waived, appellant's argument is without merit. After careful review of the record, we find the record replete with evidence that claimant recovered

from his left leg pathology to the extent that an increase in PPD benefits was unwarranted. As such, we cannot conclude that the Commission's decision was against the manifest weight of the evidence. *Chicago Park District v. Industrial Comm'n*, 263 Ill. App. 3d 835, 843, 635 N.E.2d 770, 776 (1994) ("The extent and permanency of a claimant's disability are questions of fact, and the Commission's factual determinations will not be overturned unless they are against the manifest weight of the evidence").

## B. *Temporary Total Disability Benefits*

Claimant also contends that the Commission erred when it denied claimant's petition for additional TTD benefits pursuant to section 19(h) for the period he was unable to work due to treatment of and recovery from his Achilles tendon condition. Claimant's contention raises the issue of whether an additional award of TTD benefits is contemplated by section 19(h) of the Act where the Commission determined in prior proceedings that claimant's injury reached a state of permanency.

Section 19(h) provides in pertinent part:

"[A]s to accidents ***, which are covered by any agreement or award under this Act providing for compensation in installments made as a result of such accident, such agreement or award may at any time within 30 months after such agreement or award be reviewed by the Commission at the request of either the employer or the employee on the ground that the disability of the employee has subsequently recurred, increased, diminished or ended.

On such review, compensation payments may be re-established, increased, diminished or ended." 820 ILCS 305/19(h) (West 1996).

In denying additional TTD benefits, the Commission relied on *Briggs Manufacturing Co. v. Industrial Comm'n*, 212 Ill. App. 3d 318, 570 N.E.2d 1152 (1989), without explanation. In *Briggs*, the court reversed the Commission's grant of TTD benefits and affirmed the Commission's denial of an increase in PPD benefits. There, after the Commission's initial decision, claimant had been laid off once because of a general layoff, rehired, and then laid off again because of her medical restrictions. Another employer ultimately hired her to perform light work. It was at this job that she had recurring back pain, which was treated by pain medication from her doctor. She left that job due to pay cuts and later took a job as a waitress.

Before making its findings, the court asserted:

"TTD benefits are available only from the time an employee is injured until he has recovered as much as the character of his injury will permit. [Citation.] Temporary incapacity might be described as the period of the healing process. [Citation.] Once the

Commission concludes that the petitioner's condition has stabilized and that the permanent nature of the injury can be assessed, an award of temporary total disability is no longer appropriate under section 19(h)." *Briggs Manufacturing Co.*, 212 Ill. App. 3d at 320, 570 N.E.2d at 1153.

Applying this reasoning to the facts, the court found that claimant's permanent disability had stabilized at the time of the Commission's first decision and that the Commission inappropriately awarded TTD benefits. *Briggs Manufacturing Co.*, 212 Ill. App. 3d at 321, 570 N.E.2d at 1153. See also *Howard v. Industrial Comm'n*, 81 Ill. 2d 50, 60, 405 N.E.2d 750, 755 (1980) (asserting that a claim for additional TTD benefits was not properly before Commission where "claimant's condition had stabilized and that the permanent nature and extent of the injury could be assessed"); *City of Alton v. Industrial Comm'n*, 231 Ill. App. 3d 334, 338-39, 596 N.E.2d 639, 641 (1992) (declining to review whether claimant suffered from a temporary total disability since no increase in his permanent partial disability was shown); *Archer Daniels Midland Co. v. Industrial Comm'n*, 174 Ill. App. 3d 918, 922, 529 N.E.2d 237, 240 (1988) (asserting that "once the employee's physical condition has stabilized and he has completed a rehabilitation program which will enable him to resume employment without further training or education, neither TTD nor maintenance is appropriate"); but see *Hardin Sign Co. v. Industrial Comm'n*, 154 Ill. App. 3d 386, 388, 506 N.E.2d 1066, 1067 (1987) (noting that, after a section 19(h) hearing, the Commission had awarded TTD benefits without an increase in PPD benefits and no parties appealed that determination).

Under different facts, this court in *World Color Press v. Industrial Comm'n*, 249 Ill. App. 3d 105, 619 N.E.2d 159 (1993), found that a claimant was entitled to TTD benefits under section 19(h). There, claimant's hand disability worsened after the Commission's decision, requiring three additional surgeries. As a result, claimant's physicians took him off work for substantial intervals. The Commission granted claimant's section 19(h) request for an increase in PPD benefits and additional TTD benefits.

In affirming the Commission's award of TTD benefits, the court clarified the rule followed in *Briggs*. The court explained that a period of temporary total disability can be the result of a period in which a petitioner's permanent partial disability, which was once thought to be permanent, becomes unstable or degenerates and requires additional treatment to restabilize. *World Color Press*, 249 Ill. App. 3d at 109, 619 N.E.2d at 162. The court asserted that, in such cases, an additional period of temporary total disability is compensable by an award of TTD benefits. *World Color Press*, 249 Ill. App. 3d at 109, 619 N.E.2d at 162.

■ Employer argues that, under *World Color*, claimant must first prove that his permanent partial disability materially increased before he can obtain an additional award of TTD benefits. We disagree. Although the law requires a claimant to prove that his permanent disability has materially increased to qualify for an increase in his PPD benefits, a claimant does not have to prove an increase in his permanent disability to be entitled to TTD benefits. See *World Color Press*, 249 Ill. App. 3d at 109, 619 N.E.2d at 162 (claimant required additional treatment to restabilize a condition that was thought to be stable and permanent causing claimant to be temporarily and totally disabled during the treatments and the subsequent recovery periods). Rather, all claimant must show is that his disability destabilized and required more treatment or recovery time and that, consequently, he was temporarily and totally disabled. *World Color Press*, 249 Ill. App. 3d at 109, 619 N.E.2d at 162. That claimant's permanent disability later restabilized or improved after further treatment or recovery does not change the fact that he was temporarily and totally disabled and unable to work.

This approach comports with the spirit and purpose of the Act.

" 'The Workers' Compensation Act is a humane law of a remedial nature. [Citation.] The underlying purpose of the Act is to provide financial protection for workers whose earning power is interrupted or terminated as a consequence of injuries arising out of and in the course of their employment.' " *World Color Press*, 249 Ill. App. 3d at 109, 619 N.E.2d at 162, quoting *Hardin Sign Co.*, 154 Ill. App. 3d at 389, 506 N.E.2d at 1068.

■ When the Commission rendered its decision, it lacked the benefit of the guidance provided in *World Color*. Consequently, we remand this case back to the Commission for determination of whether claimant is entitled to an additional award of TTD benefits.

## III. CONCLUSION

For the foregoing reasons, we affirm the circuit court's confirmation of the Commission's decision denying an increase in PPD benefits, but reverse the circuit court's confirmation of the Commission's decision denying additional TTD benefits and remand this case back to the Commission for further proceedings consistent with this opinion.

Affirmed in part and reversed in part; cause remanded.

McCULLOUGH, P.J., and COLWELL, HOLDRIDGE, and RARICK, JJ., concur.