2016 IL App (1st) 150122WC

Opinion filed: July 8, 2016

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

WORKERS' COMPENSATION COMMISSION DIVISION

| | | |
|---|---|---|
| JOHN CHLADA, | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | Appeal No. 1-15-0122WC |
| | ) | Circuit No. 12-L-51545 |
| | ) | |
| THE ILLINOIS WORKERS' | ) | Honorable |
| COMPENSATION COMMISSION *et al.* | ) | Alexander P. White, |
| (Burke Beverage, Inc., Appellees). | ) | Judge, Presiding. |

PRESIDING JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion.
Justices Hoffman, Hudson, Harris, and Stewart concurred in the judgment and opinion.

**OPINION**

¶ 1     The claimant, John Chlada, filed an application for adjustment of claim under the

Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 1998)), seeking benefits for an

injury to his lower back that he allegedly sustained in a work-related accident on July 15, 1999,

while he was employed by respondent Burke Beverage, Inc. (employer).  After conducting a

hearing, an arbitrator found that the claimant had proven a work injury arising out of and in the

course of his employment and that his current lower back condition was causally related to the

work accident. The arbitrator ordered the employer to pay the claimant temporary total disability (TTD) benefits, temporary partial disability (TPD) and maintenance benefits.

¶ 2    The employer appealed the arbitrator's decision to the Illinois Workers' Compensation Commission (Commission). The Commission modified the arbitrator's decision by vacating the arbitrator's award of TPD/maintenance benefits and by awarding the claimant wage differential benefits pursuant to section 8(d)(1) of the Act (820 ILCS 305/8(d)(1) (West 1998)) at a rate of $430 per week for 135 weeks, from June 12, 2000, through January 12, 2003. During that time period, the claimant was unable to return to his usual occupation as a beer delivery truck driver and had been working in the employer's warehouse at a reduced hourly rate. The Commission found that the claimant's entitlement to wage differential benefits ended on January 12, 2003, when he began losing time from work on account of a separate work-related injury to his cervical spine.[1] The Commission affirmed the arbitrator's decision in all other respects.

¶ 3    The claimant sought judicial review of the Commission's decision in the circuit court of Cook County, arguing that his entitlement to wage differential benefits did not end on January 12, 2003, and that the Commission had miscalculated the rate for those benefits. The circuit court confirmed the Commission's determination that wage differential benefits should cease on January 12, 2003. However, the circuit court remanded the matter to the Commission and directed the Commission to recalculate the claimant's average weekly wage and wage differential benefits.

---

[1] The claimant's cervical spine injury was the subject of a second workers' compensation claim which is not at issue in this appeal. In that proceeding, the Commission subsequently awarded the claimant permanent total disability (PTD) benefits for his cervical injury, which permanently and completely disabled him from working.

¶ 4     On remand, the Commission corrected the wage differential benefit rate to $485.65 per week and awarded the claimant an additional 66 2/7 weeks of wage differential benefits for the time period of January 12, 2003, to April 22, 2004.

¶ 5     The employer filed a "Motion to Correct Clerical Error" with the Commission, arguing that the Commission had misstated and misapplied the circuit court's remand order.  The Commission denied the employer's motion.

¶ 6     The claimant sought judicial review of the Commission's remand order in the circuit court of Cook County, arguing that his wage differential benefits should continue indefinitely and should not cease on April 22, 2004, because his disability from the July 15, 1999, work injury had not ended.  Neither party contested the Commission's finding that the claimant was entitled to wage differential benefits at the rate of $485.65 per week.  The circuit court found that the Commission's decision to extend the claimant's wage differential award through April 22, 2004, was against the manifest weight of the evidence because the claimant's entitlement to wage differential benefits terminated on January 13, 2003, "at which time PTD benefits began." Accordingly, the circuit court set aside the Commission's remand order.  The circuit court's order also stated, without analysis or explanation, that "the A.W.W. [average weekly wage] pursuant to Section 8(d)(1) is $455.65."

¶ 7     This appeal followed.

¶ 8                         FACTS

¶ 9     At the time of his first injury, the claimant worked for the employer as a beer truck driver and a beer delivery salesman. His job duties included driving a truck, unloading cases of beer, and sales.  On July 15, 1999, the claimant injured his low back while pulling a hand truck loaded with six cases of beer up a stairway.

¶ 10    That same day, the claimant sought treatment with Dr. Mitchell Weiss, a chiropractor.

Dr. Weiss took the claimant off work, performed chiropractic adjustments on the claimant, and diagnosed intercostal neuralgia.[2] Dr. Weiss referred the claimant to Dr. Andrew Zelby, a neurosurgeon. The claimant treated with Dr. Zelby from October 29, 1999, through May 31, 2000. During that period, Dr. Zelby administered epidural steroid injections and prescribed physical therapy and work hardening. The claimant was kept off work from July 15, 1999, through January 16, 2000.

¶ 11    From January 17, 2000, through March 15, 2000, the claimant worked a light duty job in the employer's warehouse. The position paid less than the claimant's regular position as a beer truck driver. While working in the warehouse, the claimant earned $15.73 per hour (or $629.20 per week for a 40-hour work week). The employer paid the claimant wage differential benefits during this period.

¶ 12    On February 4, 2000, the claimant returned to Dr. Zelby complaining of continuing low back pain and worsening left leg pain. Approximately one month later, Dr. Zelby performed a left sided L5-S1 hemilaminectomy, foraminatomy, and microdiscectomy. The postoperative diagnosis was a herniated disc at L5-S1. After a course of physical therapy and work hardening, Dr. Zelby released the claimant to light duty work on May 31, 2000, with permanent restrictions of no continuous, repetitive lifting, carrying, bending, and stooping, no repetitive lifting over 35 pounds, and no occasional lifting over 75 pounds.

¶ 13    On June 12, 2000, the claimant returned to work in a light duty position in the employer's warehouse. He worked in that capacity through January 12, 2003. He initially earned $15.73 per

---

[2] "Intercostal neuralgia" is a pain condition involving the intercostal nerves that supply the muscles between the ribs. Patients with this type of neuralgia experience bands of pain around the rib cage. The pain is usually intermittent and spasmodic.

hour and worked 40 hours per week. His salary was later raised to $16.23 per hour for a 40-hour work week.

¶ 14    On October 23, 2002, the claimant sustained a neck injury while working in the warehouse. On that date, the claimant pulled up on the spring of a dock plate and notice neck pain radiating down his left arm. The claimant returned to Dr. Zelby, who prescribed medications and four weeks of physical therapy. An MRI of the claimant's cervical spine was performed on January 7, 2013. The MRI revealed a herniated disc at C5-C6 and radiculopathy at C6. On January 13, 2003, Dr. Zelby took the claimant off work and recommended rest and a series of epidural steroid injections.

¶ 15    On June 17, 2003, Dr. Zelby performed surgery on the claimant's cervical spine, including a discectomy at C5-C6. The postoperative diagnoses were herniated discs and spondylosis at C5-C6 and C6-C7. After surgery, the claimant began a course of physical therapy and work hardening. On November 6, 2003, the claimant underwent a functional capacity examination (FCE) for the cervical region. He was restricted from performing continuous repetitive activities of the upper extremities. Frequent bilateral lifting and carrying at the chest level and above were restricted to 58 pounds, and the claimant was limited to occasional overhead reaching. On January 14, 2004, Dr. Zelby indicated that these restrictions were permanent.

¶ 16    After the claimant received his permanent work restrictions, the employer informed him that he was not wanted back at work. The claimant subsequently conducted a job search during which he contacted more than 1,000 companies. He never received a job, and he has not worked since January 13, 2003.

¶ 17    The claimant filed two separate workers' compensation claims against the employer, one for his July 15, 1999, lower back injury (Case No. 02 WC 58819) and one for his October 23,

2002, cervical injury (Case No. 02 WC 54676). The instant appeal concerns only the former claim (Case No. 02 WC 58819). In that case, the parties stipulated that, during the year prior to the July 15, 1999, work accident, the claimant's average weekly wage was $1294.20. During the arbitration hearing, the claimant introduced into evidence the collective bargaining agreement (CBA) that would have covered his employment with the employer from February 1, 2003, through January 13, 2008. At the time of the arbitration hearing, the CBA provided that package driver salesmen earned $0.37 per case. The claimant testified that he sold approximately 4,500 cases per week on average. At the time of the arbitration hearing, the CBA provided that warehouseman were paid $17.49 per hour. The claimant testified that, prior to his cervical injury, he had been working 40 hours per week at the warehouse on average. The employer did not rebut the claimant's testimony on these matters.

¶ 18    The arbitrator found that the claimant had proven that he sustained an accident on July 15, 1999, that arose out of and in the course of his employment and that his current lower back condition was causally related to that accident. The arbitrator ordered the employer to pay the claimant TTD benefits for a total of 27 weeks, with the final TTD period ending on June 11, 2000. The arbitrator also awarded the claimant "TPD/maintenance" benefits for the period from June 12, 2000 through October 23, 2002 (the date the claimant sustained his cervical injury), at the rate of $485.65 per week.

¶ 19    The employer appealed the arbitrator's decision to the Commission. The Commission modified the arbitrator's decision by vacating the arbitrator's award of TPD/maintenance benefits and by awarding the claimant wage differential benefits pursuant to section 8(d)(1) of the Act (820 ILCS 305/8(d)(1) (West 1998)) from June 12, 2000, through January 12, 2003. The Commission found that, as a result of the July 15, 1999, work accident, the claimant was unable to return to his usual occupation as a delivery truck driver. It noted that, although the claimant

eventually resumed working for the employer in the warehouse, he did so "at a reduced hourly rate." The Commission calculated the rate of the claimant's wage differential benefits by calculating the difference between the claimant's average weekly wage as a beer truck driver (which the parties stipulated was $1294.20 per week) and what the claimant testified he was earning while he worked in the employer's warehouse ($629.20 per week through February 7, 2002, and $649.20 per week thereafter), and then multiplying the resulting figure by two-thirds. Applying this methodology, the Commission found that the claimant was entitled to a wage differential benefit of $443.33 per week for the time period of June 12, 2000, through February 7, 2002, and $430 per week for the time period of February 8, 2002, through January 12, 2003. The Commission rejected the claimant's argument that his wage differential should be based upon the salary he could have earned as a beer truck driver at the time of arbitration (*i.e.*, $1665.00 per week), rather than the average weekly wage he had been earning prior to his back injury. In so ruling, the Commission stated that "the parties stipulated to an average weekly wage of $1294.20 and that stipulation is binding." In support of its decision to terminate the claimant's wage differential benefits on January 12, 2003, the Commission stated,

> "Pursuant to § 8(d)(1), the claimant's entitlement to wage differential continues for the 'duration of the disability'. The Commission finds that the claimant's disability as a result of this injury ended on January 12, 2003, when he began losing time from work on account of his injury on October 23, 2002 (case # 02 WC 54676). Therefore, no further wage differential payments would be due thereafter."

The Commission affirmed and adopted the arbitrator's decision in all other respects.

¶ 20    The claimant sought judicial review of the Commission's decision in the circuit court of

Cook County, arguing that his entitlement to wage differential benefits did not end on January 12, 2003, and that the Commission has miscalculated the rate for those benefits. The circuit court confirmed the Commission's determination that wage differential benefits should cease on January 12, 2003. The circuit court noted that, in order to qualify for wage differential benefits under section 8(d)(1) of the Act, a claimant must prove: (1) a partial incapacity which prevents him from pursuing his usual and customary line of employment; and (2) an impairment of earnings. Relying upon our decision in *Smith v. Industrial Comm'n*, 308 Ill. App. 3d 260 (1999), the circuit court ruled that "[t]he object of section 8(d)(1) is to compensate an injured claimant for his reduced earnings capacity, and if an injury does not reduce his earning capacity, he is not entitled to compensation" under that section. The court noted that, after January 12, 2003, the claimant was unable to work at all due to his subsequent cervical injury. The court held that, "[a]t that point, the claimant was not suffering an impairment to his earning" because he was unable to show the average amount he was earning or was able to earn in some suitable employment or business after the July 15, 1999, work accident.

¶ 21    However, the circuit court found that the Commission's calculation of the claimant's wage differential benefit rate was contrary to law. Relying upon our decisions in *General Electric Co. v. Industrial Comm'n*, 144 Ill. App. 3d 1003, 1014 (1986), and *Greaney v. Industrial Comm'n*, 358 Ill. App. 3d 1002, 1022-23 (2005), the circuit court noted that section 8(d)(1) requires the Commission to calculate wage differential awards based on the amount that the claimant "would be able to earn" at the time of the hearing if he were able to fully perform the occupation in which he was engaged at the time of the accident. The court noted that, in this case, the only evidence as to what the claimant could earn as a beer truck driver at the time of the hearing was the claimant's testimony "that he averaged 4500 cases per week at a current union contracted price of 37 cents per case, which equals an average weekly wage of $1,665.00." The court found

that the Commission had "erred in its calculation of [the claimant's] wage differential award by basing it on [his] earnings prior to the accident rather than the earnings [he] would have earned in his job as a beer truck driver at the time of the hearing."

¶ 22    Accordingly, the court reversed the Commission's decision in part and remanded the case to the Commission with instructions to: (1) "award [the claimant] wage differential benefits under section 8(d)(1) of the Act beginning on June 12, 2000, and ending on January 12, 2003"; and (2) calculate the claimant's wage differential benefits "in accordance with the court's findings as to the amount [the claimant] would have been able to earn in the full performance of his duties as a beer truck driver at the time of the arbitration hearing and the amount that he is able to earn after his injury and subject to the limitations as the maximum amounts set forth in the Act."

¶ 23    On remand, the Commission noted that the circuit court's order had confirmed the portion of the Commission's prior decision holding that the claimant "was not entitled simultaneously to a lifetime wage differential and a lifetime permanent and total disability award."  However, the Commission stated that the circuit court had reversed the portion of the Commission's prior decision in which the Commission found that the claimant's right to wage differential benefits terminated on January 12, 2003.  The Commission stated that "[t]he Circuit Court decision specified that the wage differential award should be set at $485.65 a week and that [the] right to wage differential should extend past January 12, 2003."  Based on this understanding of the circuit court's remand order, the Commission extended the claimant's wage differential award through April 22, 2004, the date that the claimant was found to be permanently and totally disabled from his cervical injury.[3]

---

[3] The Commission noted that, in Case No. 02 WC 54676, the Commission had found that the claimant was permanently and totally disabled as of April 22, 2004, and that this finding was

¶ 24    The employer subsequently filed a "Motion to Correct Clerical Error" with the Commission, arguing that the Commission had misstated and misapplied the circuit court's remand order.  The Commission denied the employer's motion.

¶ 25    The claimant sought judicial review of the Commission's decision on remand in the circuit court of Cook County.  The claimant argued that his wage differential benefits should continue indefinitely and should not cease on April 22, 2004, because his disability from the July 15, 1999, work injury had not ended.  Neither party contested the Commission's re-calculation of the rate at which the claimant's wage differential benefits should be paid (*i.e.*, $485.65 per week).  The circuit court found that the Commission's decision to extend the claimant's wage differential award through April 22, 2004, was against the manifest weight of the evidence because the claimant's entitlement to wage differential benefits terminated on January 13, 2003, "at which time PTD benefits began."  Accordingly, the circuit court set aside the Commission's remand order.  The circuit court's order also stated, without further discussion or analysis, that "the A.W.W. [average weekly wage] pursuant to section 8(d)(1) is 455.65."

¶ 26    This appeal followed.


¶ 27                                      ANALYSIS

¶ 28                    1. The Duration of the Claimant's Wage Differential Benefits

¶ 29    This case raises an issue of first impression regarding the interplay between wage differential benefits under section 8(d)(1) of the Act (820 ILCS 305/8(d)(1) (West 1998)) and PTD benefits under section 8(f) of the Act.  (820 ILCS 305/8(f) (West 2002)).  Specifically, this

---

subsequently confirmed by the circuit court.

case presents the question whether a claimant may be entitled to collect both types of benefits simultaneously when his earning capacity is diminished by a work related accident and he subsequently suffers a second work related accident that renders him totally unable to work.

¶ 30    In this case, the Commission initially found that the claimant's entitlement to receive wage differential benefits following his July 15, 1999, work-related injury to his lower back terminated on January 12, 2003, when the claimant began missing work due to a separate, work-related injury to his neck for which he later received PTD benefits.[4]  The claimant argues that the Commission's ruling was erroneous as a matter of law.  Section 8(d)(1) provides, in relevant part:

"If, after the accidental injury has been sustained, the employee as a result thereof becomes partially incapacitated from pursuing his usual and customary line of employment, he shall, except in cases compensated under the specific schedule set forth

---

[4] As noted above, based on a misunderstanding of the circuit court's initial order on remand, the Commission modified its ruling on remand and awarded the claimant wage differential benefits through April 22, 2004, the date that the claimant was found to be permanently and totally disabled from his neck injury.  The circuit court subsequently reversed that ruling and held that wage differential benefits ended in January 13, 2003, "at which time PTD benefits began."  Contrary to the circuit court's ruling, claimant began receiving TTD benefits on January 13, 2003, not PTD benefits; he did not begin receiving PTD benefits until April 22, 2004.  However, the essential point for our purposes is that both the Commission and the circuit court agreed that the claimant could not receive wage differential benefits on account of his back injury while he was simultaneously receiving PTD benefits on account of his subsequent neck injury.

in paragraph (e) of this Section, receive compensation for the duration of his disability, subject to the limitations as to maximum amounts fixed in paragraph (b) of this Section, equal to 66-⅔ % of the difference between the average amount which he would be able to earn in the full performance of his duties in the occupation in which he was engaged at the time of the accident and the average amount which he is earning or is able to earn in some suitable employment or business after the accident." 820 ILCS 305/8(d)(1) (West 1998).

The claimant notes that, under section 8(d)(1), an employee who demonstrates an entitlement to wage differential benefits shall receive such benefits "for the duration of his disability." *Id.* The claimant argues that the disability caused by his July 15, 1999, back injury has never ended or improved. Dr. Zelby opined that the claimant has permanent restrictions as a result of his back injury which permanently preclude him from returning to work as a beer truck driver and salesman. The Commission never found these restrictions invalid and never found that the claimant was able to return to work as a beer truck driver. The fact that the claimant subsequently suffered another, more disabling work-related injury to his neck does not alter the fact that he is still disabled from the July 15, 1999, work injury to his lower back, which has permanently diminished his earning capacity. Thus, the claimant argues, he remains entitled to receive wage differential benefits under the plain terms of section 8(d)(1).

¶ 31    Adopting the reasoning employed by the circuit court, the employer counters that wage differential benefits may be awarded only if the claimant shows an "impairment of earnings," which is calculated by subtracting what the claimant is earning (or able to earn) in some suitable employment at the time of arbitration from what he was earning in the full performance of his

prior position. *Smith*, 308 Ill. App. 3d at 265-66. The employer maintains that the claimant cannot demonstrate an "impairment of earnings" in this case, because the October 23, 2002, cervical injury rendered him unable to work in any capacity.

¶ 32    "The object of section 8(d)(1) is to compensate an injured claimant for his reduced earning capacity ***." *Smith*, 308 Ill. App. 3d at 265-66; see also *Rutledge v. Industrial Comm'n*, 242 Ill. App. 3d 329 (1993). To qualify for a wage differential award under section 8(d)(1), a claimant must prove: (1) a partial incapacity which prevents him from pursuing his "usual and customary line of employment," and (2) an impairment of his earnings. 820 ILCS 305/8(d)(1) (West 1998); *Greaney*, 358 Ill. App. 3d at 1014. To establish a diminished earning capacity, a claimant "must prove his actual earnings for a substantial period before his accident and after he returns to work, or in the event he is unable to return to work, he must prove what he is able to earn in some suitable employment." *Smith*, 308 Ill. App. 3d at 266.

¶ 33    Here, it is undisputed that the claimant suffered a partial incapacity during the July 15, 1999, work accident that prevented him from pursuing his usual and customary line of employment as a beer truck driver. It is also undisputed that the claimant earned less as a warehouseman than he would have earned if he had continued to work as a beer truck driver after the July 1999 accident. Accordingly, the claimant proved both elements of a claim for wage differential benefits.

¶ 34    However, the Commission found that the claimant's entitlement to wage differential benefits "ended" on January 12, 2003, the date he began missing work as a result of his subsequent cervical injury.[5] The Commission reasoned that the claimant's disability from the

---

[5] In Case No. 02 WC 54676, the Commission awarded the claimant TTD benefits from January 13, 2003, through April 22, 2004, and awarded him PTD disability benefits for life thereafter.

July 15, 1999, work accident "ended" on that date. In confirming the Commission's ruling, the circuit court stated that, after January 12, 2003, the claimant could not demonstrate a diminished earning capacity as a result of the July 15, 1999, lower back injury because he was unable to show that he was earning or able to earn any amount in some suitable employment or business.

¶ 35    We disagree. As noted, the object of section 8(d)(1) is to compensate a claimant for a diminished earning capacity caused by a work-related injury. *Smith*, 308 Ill. App. 3d at 265-66. Here, the claimant suffered a diminished earning capacity due to the July 1999 work accident, which rendered him unable to work as a delivery truck driver and forced him to work in the employer's warehouse at a lower salary. The fact that the claimant subsequently suffered an unrelated and even more disabling work injury to his neck did not alter the fact that his July 1999 back injury reduced his earning capacity. Once the claimant established an entitlement to wage differential benefits as a result of his July 1999 back injury, he was entitled to collect such benefits "for the duration of his disability." 820 ILCS 305/8(d)(1) (West 1998). The disability (*i.e.*, the reduced earning capacity) the claimant suffered as a result of the July 1999 back injury did not end merely because he suffered a second, more disabling work injury. The claimant's entitlement to wage differential benefits would end if and only if he later became able to earn the salary he formerly earned as a delivery truck driver. That never happened in this case.

¶ 36    Moreover, if the claimant's wage differential benefits were terminated as of the date he began missing work due to his subsequent neck injury (as the Commission initially ruled), or as of the date he became entitled to collect PTD benefits as a result of his neck injury (as the Commission ruled on remand), the claimant would not be made whole. Section 8(f) requires that the claimant's PTD benefits be calculated based on the salary he was earning at the time of the permanently disabling injury (*i.e.*, his reduced salary as a warehouseman, not his higher salary as a beer truck driver). 820 ILCS 305/8(b)(2)(f), 19 (West 2002). Under this compensation regime,

the claimant would not be compensated for the prior work-related injury that impaired his earning potential by rendering him unable to work as a beer truck driver. If the claimant had been working as a beer truck driver when he suffered a permanently disabling work injury in 2002, his PTD benefits would be much higher. Thus, paying the claimant only PTD benefits after his second injury (and calculating such benefits based upon his salary as a warehouseman) would not make the claimant whole. This would frustrate the fundamental remedial purpose of the Act. See *Contreras v. Industrial Comm'n*, 306 Ill. App. 3d 1071, 1076 (1999) ("The Act is a humane law of a remedial nature, whose fundamental purpose is to protect employees by providing efficient remedies and prompt and equitable compensation for their injuries.").

¶ 37   The employer argues that awarding the claimant both wage differential benefits and PTD benefits would amount to a "double recovery." We do not find this argument persuasive. The Act is meant to compensate a claimant for economic disabilities that diminish his value in the labor market, not for physical disabilities *per se*. See, *e.g.*, *World Color Press v. Industrial Comm'n*, 249 Ill. App. 3d 105, 109-10 (1993) ("The underlying purpose of the Act is to provide financial protection for workers whose earning power is interrupted or terminated as a consequence of injuries arising out of and in the course of their employment." (Internal quotation marks omitted.)). In this case, the claimant suffered two separate economic disabilities. First, the July 1999 back injury rendered the claimant unable to work as a beer truck driver, which diminished his earning capacity. Second, the October 2002 cervical injury rendered him permanently unable to work, and thereby unable to earn what he had previously been earning as a warehousemen.

¶ 38   The first economic disability is compensated by paying the claimant a wage differential benefit equal to 2/3 of the difference between what he was able to earn as a beer truck driver at the time of arbitration and what he was actually earning as a warehouseman at the time of

arbitration (subject to the statutory cap in existence at the time, which was $485.65 per week). The second economic disability is compensated by paying the claimant PTD benefits in the amount of 2/3 of the salary he was earning as a warehouseman at the time of the second injury subject to the statutory cap, which amounts to $446.40 per week. Thus, in order to be fully compensated under the Act for both of these work-related economic injuries, the claimant should receive both wage differential benefits of $485.65 per week indefinitely, and PTD benefits of $446.40 per week indefinitely.[6]

¶ 39     It should be noted that, in Commission Case No. 02 WC 54676 (which is not at issue in this appeal), the Commission awarded the claimant PTD benefits based upon his average weekly wage as a delivery truck driver in 1999, which the parties stipulated was $1294.20 per week. That was error. As noted above, PTD benefits are calculated based upon the salary the claimant is earning at the time of the permanently disabling injury. In this case, the claimant suffered his permanently disabling neck injury in October 2002, when he was working in the warehouse. Accordingly, the Commission should have calculated the claimant's PTD benefits based on his salary as a warehouseman, not his salary as a beer truck driver. However, this error is not before us. The award of PTD benefits was the subject of a separate proceeding which has not been

---

[6]   If the claimant becomes able to work in the future, the employer may cease paying the claimant PTD benefits. 820 ILCS 305/8(f) (West 2002); see also *Cassens Transport Co. v. Illinois Industrial Comm'n*, 218 Ill. 2d 519, 527 (2006). Moreover, an employer may petition to modify (*i.e.*, reduce or terminate) the wage differential award within 30 months of the Commission's issuance of the award. 820 ILCS 305/19(h) (West 2002)); *Cassens Transport*, 218 Ill. 2d at 528.

appealed to this court, and the time for voiding the Commission's order in that proceeding has expired. Thus, we cannot correct the Commission's error on this issue. In any event, the Commission's erroneous inflation of PTD benefits in the other proceeding does not make the claimant whole. Even with the Commission's error, the claimant is still receiving approximately $70 less per week than he would be receiving if he received both wage differential and PTD benefits at the proper rate, indefinitely.

¶ 40    Thus, contrary to the employer's argument, it is the denial of wage differential benefits after January 12, 2003, and not the payment of such benefits, that would create an inequitable result. As noted, the denial of wage differential benefits after January 12, 2003, would deprive the claimant of compensation for the reduction of his earning capacity caused by the July 15, 1999, work injury. Moreover, if the claimant had been awarded wage differential benefits for his 1999 back injury before he was awarded PTD benefits for his 2002 neck injury, his wage differential benefits would have been awarded indefinitely. The fact that the claimant was first awarded PTD benefits for his neck injury in this case should not change that result. The employer should not be allowed to take advantage of a fortuitous circumstance (*i.e.*, the timing of the PTD award) that has nothing to do with the claimant's entitlement to wage differential benefits.

¶ 41    Accordingly, we reverse the Commission's decision to terminate wage differential benefits in January 2003. As noted above, the Commission's decision fails to adequately compensate the claimant for his first economic injury, *i.e.*, the diminishment of his earning capacity due to the July 1999 back injury. The subsequent award of PTD benefits based upon his reduced salary as a warehouseman would not compensate him for that economic injury. Moreover, the Commission's erroneous inflation of PTD benefits in the other proceeding does not rectify the situation. There is nothing in the Act prohibiting us from awarding both PTD and

wage differential benefits simultaneously and indefinitely under circumstances like those presented here. Nor has any published case held that we are prohibited from doing so under the Act. If the legislature intends these two types of benefits to be mutually exclusive, it is up to the legislature to make that intention clear. Until that happens, we must construe the Act liberally as authorizing both types of benefits simultaneously under the facts presented here. *Flynn v. Industrial Comm'n*, 211 Ill. 2d 546, 556 (2004) ("the Workers' Compensation Act is a remedial statute intended to provide financial protection for injured workers, and it is to be liberally construed to accomplish that objective"); *Boyer-Rosene Moving Service v. Industrial Comm'n*, 48 Ill. 2d 184, 186 (1971) ("[the] Act is a humane law of remedial nature, and wherever construction is permissible its language is to be liberally construed to effect its purpose, which is that the burdens of caring for the casualties of industry should be borne by industry and not by the individuals whose misfortune arises out of the industry, nor by the public, and *every injury sustained in the course of an employee's employment which causes a loss to the employee should be compensable*" (emphasis added) (internal quotation marks omitted)); see also *World Color Press*, 249 Ill. App. 3d at 110 (ruling that "[r]emedial legislation" like the Act "should be construed liberally to effectuate its purposes" (internal quotation marks omitted)). We must compensate the claimant for both of his work-related economic disabilities to the full extent permitted by the Act. A contrary holding would be inconsistent with the Act's fundamental remedial purpose.

¶ 42    One further point bears mentioning. The parties dispute the standard of review that should govern our analysis. The claimant frames the issue presented in this appeal as a question of statutory construction, *i.e.*, the meaning of the phrase "duration of the disability" in section 8(d)(1) of the Act and whether wage differential benefits required to be paid for the "duration of the disability" under that section should continue after the claimant suffers an intervening

disabling injury. If the issue presented is understood in this way, our review would be *de novo*. See, *e.g.*, *Cassens Transport*, 218 Ill. 2d at 524 (where case required the court to interpret section 8(d)(1) of the Act, such statutory construction presented a question of law that the court reviewed *de novo*). On the other hand, however, the employer argues that the question presented in this case is whether the claimant satisfied the elements of a claim for wage differential benefits (including showing an impairment of earnings), a factual question for the Commission that is reviewed under the manifest weight of the evidence standard. See, *e.g.*, *Morton's of Chicago v. Industrial Comm'n*, 366 Ill. App. 3d 1056, 1061 (2006); *Radaszewski v. Industrial Comm'n*, 306 Ill. App. 3d 186, 192 (1999). We find it unnecessary to resolve this dispute, however, because the claimant prevails under either standard. As noted, the claimant established a diminished earning capacity as a result of the July 1999 work accident. That economic disability was not eliminated or cured by the claimant's subsequent neck injury. Moreover, the claimant would not be adequately compensated for the economic disability caused by the July 1999 work injury if his recovery were limited to PTD benefits for the subsequent neck injury, which would be based on his diminished salary as a warehouseman. This is true regardless of whether one regards the issue presented as a pure question of statutory construction or a question about the sufficiency of the evidence.

¶ 43          2. The Amount of the Claimant's Wage Differential Benefits

¶ 44     In its first order in this case, the circuit court found that the Commission had "erred in its calculation of [the claimant's] wage differential award by basing it on [his] earnings prior to the accident rather than the earnings [he] would have earned in his job as a beer truck driver at the time of the hearing." See *General Electric Co.*, 144 Ill. App. 3d at 1014; *Greaney*, 358 Ill. App. 3d at 1022-23. The court therefore reversed the Commission's order in part and remanded the matter to the Commission with instructions to calculate the claimant's wage differential benefits

"in accordance with the court's findings as to the amount [the claimant] would have been able to earn in the full performance of his duties as a beer truck driver at the time of the arbitration hearing and the amount that he is able to earn after his injury and subject to the limitations as the maximum amounts set forth in the Act." Applying the circuit court's instructions on remand, the Commission awarded the claimant wage differential benefits at the rate of $485.65, the maximum rate of wage differential benefits awardable under the Act at the time of the claimant's July 15, 1999, work accident.

¶ 45     On review of the Commission's order on remand, however, the circuit court stated that "the [claimant's] A.W.W. [average weekly wage] pursuant to section 8(d)(1) is 455.65."

¶ 46     On appeal, the claimant argues that "[t]here is no basis in the record for the circuit court to find an average weekly wage of $455.65." We agree. The Commission's wage determination is a question of fact which we will reverse only if it is contrary to the manifest weight of the evidence. *Smith v. Industrial Comm'n*, 308 Ill. App. 3d 260 (1999). Here, the parties stipulated that, during the year preceding his July 15, 1999, work injury, the claimant's average weekly wage as a beer truck delivery driver and salesman was $1294.20. Moreover, the CBA that would have covered the claimant's employment at the time of the arbitration hearing, coupled with the claimant's unrebutted testimony, established that the claimant would have been earning $1665.00 per week in that position at the time of the arbitration hearing, and he would have been earning $669.60 per week as a warehouseman at the time of the hearing. Applying section 8(d)(1)'s formula for calculating wage differential benefits to these figures yields a weekly benefit of $663.60. ($1665.00 - $669.60 x 2/3 = $663.60.) The parties agree the maximum rate of wage differential benefits awardable under the Act at the time of the claimant's July 15, 1999, work accident was $485.65 per week. The employer agrees that the claimant is entitled to receive wage differential benefits at that rate, and suggests that the circuit court's finding of an "average

weekly wage" of $455.65 is "simply a clerical error." The parties urge us to confirm the Commission's award of wage differential benefits at the rate of $485.65 per week.

¶ 47    We see no reason not to do so. Accordingly, to the extent that the circuit court ruling that the claimant was entitled to wage differential benefits at a rate at $455.60 per week, we reverse that ruling and reinstate the Commission's order setting the wage differential benefit rate at $485.65 per week. We also confirm the parties' stipulation that the claimant's average weekly wage as a beer truck delivery driver and salesman in the year prior to his July 15, 1999, work accident was $1294.20.

¶ 48                                    CONCLUSION

¶ 49    For the foregoing reasons, we reverse the Commission's determination that the claimant's entitlement to wage differential benefits terminated when the claimant became disabled as a result of a separate work-related injury; (2) reverse the portion of the circuit court's judgment setting the wage differential benefit rate at $455.65 per week; (3) reinstate the Commission's determination on remand that the claimant is entitled to wage differential benefits at the rate of $485.65 per week; and (4) remand for further proceedings consistent with this opinion.

¶ 50    Reversed; cause remanded.